### William E. Bond et al. v. Homer Garrison et al.

#### Decided March 14, 1910.

**1.—Deed—Description of Land—Limitation.**

A deed to land began, "State of Texas, Anderson County;" it was acknowledged for record before the county clerk of Anderson County and was duly recorded in the deed records of that county; there was at that time in that county a survey of the same name and area as that conveyed by the deed and bounded by adjacent surveys as set out in said deed, but the deed in question did not name the State or county in which the land was situated. Held, that the deed was properly admitted in evidence over an objection that it did not describe the land therein mentioned with sufficient certainty to identify it, and therefore could not form the basis for title by limitation.

**2.—Limitation—Payment of Taxes—Name of Original Grantee.**

Where land had been formerly located and surveyed by virtue of a certain certificate, and afterwards, upon forfeiture of said location, the same land was located upon, surveyed and patented by virtue of a different certificate, the payment of taxes upon said land thereafter in or by the name of the first certificate will not be sufficient to support the five years statute of limitation under the second location and certificate.

**3.—Same—Continuity of Possession—Evidence.**

One claiming title to land by limitation testified that the owner told him and his wife "to go there (upon the land) and have what we made, and after such a length of time he would make us a deed to the place. It was to be under his control. That is how I came to take charge of the place." Held to evidence an intention on the part of the occupant to hold possession for the owner and not for himself, and there was no break in the possession between the date of the occupancy and the date of the deed subsequently made by the owner to the occupant.

**4.—Partition—Undivided Interest—Sale of Specific Tract.**

Where the owner of land conveys first an undivided one-half of the same, and subsequently conveys a specific part of the tract, in a partition between the owner of the undivided interest and the owner of the specific part, the specific part will be awarded to the purchaser, he being in actual possession and enjoyment of the same and no injury resulting thereby to the owner of the undivided interest.

**5.—Limitation—Boundaries.**

In proving title to land by limitation under a deed, a general description or designation of the tract by the name by which it is commonly known must yield to a specific description by metes and bounds; and the limitation title will be confined to the specific description although the grantor had title by limitation to adjacent land included within the general designation or name of the tract.

**6.—Appeal—Findings of Fact—Exceptions—Practice.**

Since the passage of the law permitting trial judges to file their findings of fact and conclusions of law after the adjournment of the court for the term, a party appealing from the judgment is not required to make and enter of record exceptions to such findings. Exceptions to the judgment when rendered is sufficient to support objections to the conclusions filed by the court.

**7.—Title—Evidence—Recitation in Deed.**

The recitation in a deed that a part of the same tract of land had been conveyed by a prior owner to a third party, is not competent evidence of that fact.

Appeal from the District Court of Anderson County. Tried below before Hon. B. H. Gardner.

*P. N. Springer,* for appellants.—A registered deed which fails to give either the county or State in which the land is situated, and does not itself nor by reference to some other recorded instrument or permanent object furnish a description from which the location and lines of the land could be found and definitely fixed, is insufficient as a basis for title by limitation under either the five or ten years statutes. Young v. Trahan, 43 Texas Civ. App., 611; Day v. Needham, 2 Texas Civ. App., 680; Brokel v. McKechnie, 69 Texas, 33; Masterson v. Todd, 6 Texas Civ. App., 135; Kilpatrick v. Sisneros, 23 Texas, 113; Willis v. Burks, 7 Texas Civ. App., 239.

The plea of title by limitation, either under the five or ten years statute, is not sustained where, during any part of the time relied upon, the evidence shows the title was in the government and the land vacant. Creswell Ranch & Cattle Co. v. Waldstein, 28 S. W., 260; Montgomery v. Gunther, 81 Texas, 325, and cases there cited.

The payment of taxes under a void rendition and assessment is not such a payment as will support title under the five years statute of limitation. Dutton v. Thompson, 85 Texas, 115; Pitts v. Booth, 15 Texas, 455; Upshur v. Pace, 15 Texas, 532; Hull v. Woods, 14 Texas Civ. App., 593; Hoehn v. House, 31 S. W., 83; Henderson v. White, 69 Texas, 103; McCormick v. Edwards, 69 Texas, 106.

The payment of taxes on land for a certain year, the title to which was in the State on the 1st day of January of that year, is not such a payment as would support a plea of title under the five years statute of limitation. Same authorities; also Sayles' Rev. Stats., art. 5066.

Where a man instructed another to go upon a tract of land, telling him at the time that he could have what he made, and promising to make him a deed to it later, and such person under such instructions did take charge of such land and made valuable improvements thereon, and subsequently the man who had made the promise did execute and deliver to him a deed thereto, such promise showed a verbal gift of the land, and limitation ceased to run in favor of the giver, and commenced to run in favor of the other party from the date of such gift. McManus v. Matthews, 55 S. W., 589; Shepard v. Galveston, H. & H. Ry. Co., 2 Texas Civ. App., 539; Evans v. Gulf, C. & S. F. Ry. Co., 9 Texas Civ. App., 126.

Where a person by deed conveyed an undivided one-half interest in a certain tract of land, and afterwards by deed conveyed to another person a specific 100 acres out of the same tract, the court, in an action of trespass to try title, was not authorized to render judgment in favor of the second purchaser for the whole of the specific 100 acres, and force the first purchaser to accept his undivided interest out of another part of the tract.

The court erred in the fifth paragraph of his findings of fact in finding as a fact that by a deed of date September 26, 1895, Elbert Donnell conveyed to Coon Warren the same land conveyed to him by M. J. Cobb.

The court erred in the sixth paragraph of his conclusions of law in

deciding and holding as a matter of law that the defendants were entitled to the balance of that particular tract of land, and also the strip north of the Early survey and between the Foster and the Jacobs, south of a line from the northeast corner of the Jacobs 280 acres to the northeast corner of the Foster.

The court erred in overruling plaintiff's motion for a new trial, which motion was based upon the ground that the plaintiffs had, since the trial of the case, discovered new evidence.

On the trial plaintiffs read in evidence a deed from Coon Warren and wife, Mary Ann Warren, to B. P. & S. H. Adams, dated November 5, 1901, conveying to them an undivided one-half interest in the land involved in this suit, and which deed also contained the following recitation: "This is the same land deeded by M. J. Cobb to Elbert Donnell, and by said Elbert Donnell to Coon Warren on September 26, 1895, one-half of which 320 acres the said Coon Warren deeded to J. M. Emerson, of Anderson County, Texas."

After the evidence was all in and the witness, J. M. Emerson, had gone home and the argument begun, the defendant, Coon Warren, was again put upon the witness stand, and, over the objections of the plaintiffs, was allowed to testify that he had never executed a deed or any papers conveying to said J. M. Emerson any part of said land. That several days after the trial, to wit, about January 15, 1909, P. N. Springer, attorney for plaintiffs, met J. M. Emerson, and learned from him that Coon Warren had, in fact, executed to him a deed to said undivided one-half interest in said land, as recited in said deed from Coon Warren and wife to B. P. & S. H. Adams.

*Gregg & Brown,* for appellees.—It will be presumed that a deed which begins, "the State of Texas, County of Anderson," is acknowledged before an officer of Anderson County, Texas, is of record in the deed records of Anderson County, Texas, when offered in evidence is a conveyance of land located in Anderson County, Texas, and will be admissible in evidence over a general objection. Flanagan v. Boggess, 46 Texas, 335; Giddings v. Lea, 19 S. W., 682; Wilson v. Smith, 50 Texas, 367; Douthit v. Robison, 55 Texas, 73; Houston Oil Company v. Kimball, 114 S. W., 667.

Where the owner places his son-in-law in possession of land under a verbal promise to make a deed at some indefinite time in the future, he does not part with his title prior to execution of the promised deed. Rev. Stats., arts. 3342-3343 and 3344; Cantagrel v. Von Lupin, 58 Texas, 577; Harrison v. McMurray, 71 Texas, 122; Hirsch v. Patton, 49 Texas Civ. App., 499.

REESE, ASSOCIATE JUSTICE.—In this case William E. Bond and others, plaintiffs, sue in trespass to try title to recover of Homer Garrison and others, defendants, 600 acres out of a tract of 640 acres, being survey No. 3 granted to the International & Great Northern Railway Company. Bond died during the pendency of the suit, and John J. Phillips succeeded to all of his rights as plaintiff. Of the defendants, B. P. and S. H. Adams and J. M. Emmerson disclaimed as to all of the land sued for, and judgment was rendered against

them and in favor of plaintiffs on such disclaimers. Homer Garrison set up title to a specific tract of 100 acres and disclaimed as to the balance. The other defendants, Coon Warren and his wife, Mary Ann Warren, Tippie Hunter and her husband John Hunter, and Alice Sullivan and her husband Silas Sullivan, claimed jointly another specific part of the land, and disclaimed as to the balance. All of these defendants by written plea admitted that plaintiffs had title to the land sued for except in so far as such title should be defeated by their respective claims of title under the statute of limitation of five and ten years in themselves and those under whom they respectively claimed, which was specially pleaded.

The case was tried without a jury and judgment rendered for said defendant Homer Garrison for the land claimed by him, and for the other defendants not disclaiming for part of the land claimed by them, and for plaintiffs for the balance of the land sued for. From the judgment plaintiffs appeal. The court filed conclusions of fact and law which are in the record.

A brief statement of the respective titles of the parties is as follows:

On January 27, 1858, there was surveyed for J. Jacobs, by virtue of a bounty warrant issued in 1837, 320 acres of land in Anderson County, in two tracts, one of 280 acres and one of 40 acres. This case deals only with the former tract, which is described as follows:

"Beginning at the S. E. corner of the James Earley 160-acre survey on the north boundary line of the Jose Pineda three-league grant. Thence east, with the north line of said Pineda, 790 vrs. to the S. W. corner of the. D. M. Thornton survey. Thence north with the west line of the D. M. Thornton 160-acre survey, at 950 vrs., past the N. W. corner, and at 2000 vrs. a stake. Thence west 790 vrs. to a stake. Thence south 1050 vrs. to the N. E. corner of the Early survey. Thence with the east line of the Early to the place of beginning, 2000 vrs. in all." Which field notes were recorded in the surveyor's records immediately after the survey, and sent to the General Land Office.

M. J. Cobb and her husband occupied this 280 acres from about 1863 to 1871. Cobb died, and his wife, Mrs. M. J. Cobb, by deed of date June 9, 1871, and recorded February 5, 1875, conveyed to Elbert Donnell a tract of land by the following description:

"The J. Jacob headright of three hundred and twenty acres, three hundred acres out of said tract and bounded as follows: Bounded on the south by twenty acres belonging to P. Pagitt; on the east by Mr. Morgans, the Thornton 160 acres and P. Pagitts, the Walter Clark headright; on the north by vacant land; on the west by Wm. Foster, deceased, and the W. H. Stanley, in all three hundred acres."

The trial court finds, and we adopt such finding as supported by the evidence, that the following is a definite description of the land conveyed by said deed:

"Beginning at the S. E. corner of the James Early 160-acre survey on the north line of the Jose Pineda three (3) league grant. Thence east with the north line of the Pineda to the S. E. corner of the Thornton 160-acre survey. Thence north with the west line of the Thornton and the west line of the Walter Clark survey, 2000 vrs. to

the N. E. corner of the J. Jacobs 280-acre survey. Thence S. W. to the N. E. corner of the Wm. Foster 80-acre survey. Thence south with the east line of the Wm. Foster survey to the S. E. corner of same on the north line of the James Early survey. Thence east with the north line of said Early survey to N. E. corner of same. Thence south with the east line of the said Early survey to the place of beginning."

Elbert Donnell immediately took possession of said tract of land, caused his deed to be recorded February 5, 1875, and lived on the land, cultivating, using and enjoying the same, claiming title to all of said land conveyed by said deed, by virtue of the deed, from June, 1871, and personally made crops on the land for the years 1872, '73, '74, '75, '76, '77, '78, '79, '80 and '81. He moved off the place the latter part of the year 1881 (the exact date not shown, but after he had made a crop for that year). Coon Warren took possession when Donnell moved off, and continued to hold possession, making crops each year, and holding possession for and under Elbert Donnell until the land was conveyed to him by Donnell, which was done on September 26, 1895, and afterwards, with the exception of one year, which was either 1903 or 1904. On September 26, 1895, Elbert Donnell executed to Coon Warren a deed to the land, together with another tract of 20 acres to the south of it, describing the land conveyed as follows:

"All of the following tracts or parcels of land situated in Anderson County, on the waters of Brushy Creek about 20 miles north from Palestine, viz.: 20 acres of the Jose Pineda 3-league headright, on the north boundary line of said headright, bounded on the north by the J. Jacobs headright, and on the south by Jack Tatum's land, it being the same land deeded to me by P. Pagitt. And 320 acres of the J. Jacobs headright (known as the Cobb land) which is bounded on the north by the I. & G. N. R. R. Co. headright, and on the east by the Thornton and I. & G. N. R. R. Co. headright, on the south by the Jose Pineda 3-league survey, and on the west by the J. Early and I. & G. N. R. R. Co. headright."

The second of the two above-described tracts is the land in controversy, but the description does not embrace all of the land conveyed by Cobb to Donnell. The description excludes that portion of the land conveyed by Cobb to Donnell lying west of and between the J. Jacobs 280-acre survey and the William Foster survey of 80 acres, which was occupied at the time of this conveyance by the I. & G. N. R. R. survey No. 3, the land conveyed by Donnell to Warren being bounded on the west by said survey and the Early survey.

Some time prior to 1875 the survey made for Jacobs became void, and was forfeited. This is admitted by appellees. On the 3d day of March, 1876, the International & Great Northern Railroad Company had all of the land embraced in the deed from M. J. Cobb to Elbert Donnell, together with other lands adjoining the same, in all 640 acres, surveyed under a valid certificate, the field notes of which were duly recorded in the surveyor's records of Anderson County and forwarded to the General Land Office, and patent issued thereon November 27,

1877.  Appellants have regular chain of title to this land, including all of the land here in controversy, under this patent.

Elbert Donnell, during his occupancy, paid taxes on the land described in the deed from M. J. Cobb to him for the years 1872, 1873, 1874, 1875, 1876, 1877, 1878, 1879 and 1880.  The taxes were paid on land in the J. Jacobs survey.

By deed of date November 5, 1901, Coon Warren and wife, Mary Ann Warren, executed to B. P. and S. H. Adams a deed to an undivided one-half interest in the said J. Jacobs 280 acres, describing it by metes and bounds.  It is recited in the deed that Warren and wife had deeded one-half of said land to J. M. Emmerson.  There was no evidence introduced as to this recited deed.

The following agreement was made by the parties and introduced in evidence:

"It is further agreed and admitted as a fact, that said plaintiffs have a regular, complete and good and sufficient chain of transfers of said land from said patentee up to themselves, and that they are now the owners of all of said lands except the 40 acres hereinafter mentioned, and are entitled to recover judgment therefor against all of the defendants in this suit by introducing this agreement in evidence instead of their chain of title.

"But this agreement is only intended to be an admission that said plaintiffs have made out a *prima facie* case by reading it in evidence, and is not intended nor shall it be construed to prevent said defendants or any of them from defeating such *prima facie* case by pleading and proving upon the trial hereof that they or some of them have acquired title to said land or some part thereof by conveyances or limitation.  But the burden of proof shall be upon them."

There was no error in admitting in evidence over the objection of appellants the deed from Cobb to Donnell.  It is true that it is not stated in the face of the deed that the land conveyed was in either the State of Texas or the County of Anderson, but the deed begins, "State of Texas, Anderson County," was acknowledged for record before the county clerk of that county, and was found duly recorded in the deed records of that county.  There was at that time a J. Jacobs survey of 280 acres in that county, bounded by adjacent surveys as set out in this deed.  There could be no question in anybody's mind that the land conveyed was in Anderson County.  The objection was "because said deed did not describe the land therein mentioned with sufficient certainty to locate and identify it, and therefore could not form the basis for title by limitation."  Whatever ambiguity might arise when it came to applying the description contained in the deed to the land on the ground, this could not be urged as an objection to the admission of the deed in evidence.  That was a matter to be afterwards  determined.    The  objection  was  properly  overruled. (Douthit v. Robinson, 55 Texas, 73; Houston Oil Co. v. Kimball, 114 S. W., 667.)

The court found that this deed conveyed certain land, giving a particular description of the boundaries thereof with relation to the surrounding surveys and tracts of land.  It was found, we think, upon

sufficient evidence, that these were the correct and more definite boundaries of the land embraced in the deed. There was no error in so finding. Nor was there any error in finding that Elbert Donnell moved off the land in the latter part of 1881. He testified that he made a crop on the land in 1881 and moved off that year. This justified the conclusion that he moved off the latter part of the year. The second assignment of error presenting these questions to the findings is overruled.

We sustain that part of the third assignment of error that the court erred in the conclusion of law that Elbert Donnell acquired title under the statute of limitation of five years. The statute did not begin to run against the present action until the location and survey under the I. & G. N. R. R. Co. certificate on March 3, 1876. We do not understand that the court held, or that appellees contend, otherwise. Donnell's possession was adverse from that date. His possession was sufficient to have matured his title under the five years statute in all other respects if he had shown payment of taxes as required. But we think the evidence fails in this particular. He paid the taxes from 1876 to 1880, both inclusive. He was in possession under recorded deed when the statute began to run, and so continued for full five years. No taxes were legally due until the year 1877, as the land belonged to the State from some date anterior to 1875 until March 3, 1876, and, under the statute, Donnell was only required to pay taxes due, "if any." He paid the taxes for 1877, 1878, 1879 and 1880. The five years' adverse possession was completed March 3, 1881, up to which time he remained in possession, cultivating, using and enjoying the land. This was, we think, sufficient as to the time for which taxes were paid. But he testified that he paid on the J. Jacobs survey. After the location of the I. & G. N. R. R. certificate, rendition and payment of taxes on any part of the land as the Jacobs survey was insufficient to support the statute. (Dutton v. Thompson, 85 Texas, 115.) Whether the land was exempt from taxation is not presented by the record or briefs.

This, however, does not require a reversal of the judgment, as the conclusion that Donnell had title under the ten years statute is amply supported by the evidence. He himself continued in adverse possession, cultivating the land and holding under duly registered deed from 1876 up to the latter part of 1881, and the evidence is sufficient to justify the conclusion that, under verbal agreement with Coon Warren, the latter immediately succeeded him and continued in such actual possession and cultivation, use and enjoyment until Donnell conveyed the land to him in 1895. Appellants contend that the evidence does not authorize the conclusion that Warren held possession for Donnell, but that, on the contrary, his possession was independent and for himself. Warren testified that Donnell told him "to go there and have what we made, and after such length of time he would make us a deed to the place. It was to be under his control. That is how I came to take charge of the place." This does not evidence a present gift to Warren, but only, at most, a promise at some time in the future to make such gift by regular deed, the land in the meantime to belong to and to be under the control of Donnell. This was

sufficient to preserve the continuity of claim and possession in Donnell until 1895, when he deeded the land to Warren, and this established his title by ten years limitation to the land described in the deed from Cobb to him.

As we have seen, Warren first conveyed to Adams in 1901 an undivided one-half interest in the land, and afterwards; in 1903, to Homer Garrison a specific 100 acres. Adams disclaimed, and appellants had judgment against him on this disclaimer. By the judgment of the court, Garrison was given judgment for his 100 acres, and appellants were given judgment out of the balance of the land for such undivided interest therein as would equal an undivided one-half of the whole, including the 100 acres adjudged to Garrison. This is assigned as error by appellants, who contend that Adams, having title to an undivided one-half of the whole, notwithstanding the subsequent conveyance of a specific 100 acres to Garrison, and appellants succeeding to that title upon Adams' disclaimer, they likewise are entitled to the same undivided one-half of the whole, and should not be required to take their interest in a part of the whole, excluding the 100 acres.

We confess there is much force in this contention. Upon the theory, which is supported by the authorities, that in a partition between Garrison and Adams there would be set apart to Garrison the 100 acres conveyed to him by their common vendor, of which he was then in actual possession and enjoyment, provided such could be done without detriment to the interest of Adams, we overrule appellants' contention on this point, the evidence not disclosing that such partition as was effected by the judgment was not fair, just and equitable to the parties, and without detriment to the interest of appellants. No claim is made, in fact, that it was not.

The findings of fact by the trial court that Elbert Donnell conveyed to Coon Warren the same land that was conveyed by M. J. Cobb to him is attacked by the fifth assignment of error as not being supported by the evidence. The assignment must be sustained. We have, in our conclusions of fact, given the description of the land conveyed by these respective deeds, from which it appears that the boundaries of the land conveyed by Cobb to Donnell go outside of the Jacobs 280 acres of land on the west to reach the William Foster survey. The description in the deed to Coon Warren by Donnell bounds the land conveyed, on the west, by the I. & G. N. R. R. Co. survey, which at the date of that conveyance covered all the land between the old Jacobs survey and the Foster, thus confining the land, in fact, to the lines of the original Jacobs survey. The reference in the deed to the land as "the Cobb land" must yield to this specific description. The present defendants being limited in their claim to the land conveyed by Donnell to Warren, both by their paper title and their limitation title based thereon, are not entitled to any part of the land sued for not embraced in this deed. In view of the agreement herein copied, appellees were not entitled to recover this land. The agreement limited their right to such of the land as they showed a title to in themselves or some of themselves. That the evidence disclosed title under the statute of limitations of ten years in Elbert Donnell to this part of the land, did not entitle appellees to it, such title not

having in any way passed to them to be used either defensively or offensively. They had admitted that it belonged to appellants unless they showed that it belonged to them or some of them, which did not include Elbert Donnell. No limitation title was shown in any of the defendants except through Donnell. As to this part of the land, which was adjudged to Coon Warren and wife, Tippie Hunter and John Hunter, and Alice Sullivan and Silas Sullivan, and separately described in the decree, the judgment will be reversed and here rendered for appellants. This question is presented by the fifth and eighth assignments of error.

The sixth and seventh assignments of error assail the findings that Tippie Hunter and Alice Sullivan were daughters of Coon Warren's first wife, who appears to have been a daughter of Elbert Donnell, and adjudging that they are entitled, along with Coon Warren and wife, to certain of the land. We can find no evidence in the record to authorize this finding or judgment. Appellees make no reply to the statement in appellants' brief that there is none, except to object to the consideration of any objection to the fact findings on the ground that no exceptions were made and entered of record to these findings in the trial court. It appears that the findings of fact and conclusions of law were filed after adjournment, under the provisions of a late statute. The statute makes no provision for the presentation of these conclusions to the parties. It would be absurd to require either party to except in advance to the preparation and filing of the conclusions. It has been held that exceptions to the judgment when rendered is sufficient to support objections to the conclusions filed by the court. (Continental Ins. Co. v. Milliken, 64 Texas, 46; Voight v. Mackle, 71 Texas, 78; Wilkens v. Burns, 25 S. W., 431; Temple v. Watkins Land Co., 81 S. W., 1188; Thompson v. State, 23 Texas Civ. App., 370.) The judgment of the court was duly excepted to, as was the order overruling the motion for new trial, and this was, we think, sufficient. There is no merit in the assignment of error to the action of the court in overruling the motion for a new trial on the ground of newly-discovered evidence. Appellant was offered ample time and opportunity to procure the testimony of the witness after he discovered its importance, of which he declined to avail himself. We think that, in fact, he should have proven by Emmerson the execution of the deed to him, which had been destroyed, if he proposed to avail himself of any advantage on this account. The mere recital of such conveyance in the deed to Adams was not original evidence of that fact.

The judgment in favor of Homer Garrison is affirmed, as is also the judgment in favor of the other appellees except as to the land lying west of the Jacobs survey and between that and the Foster survey, as hereinbefore referred to, as to which the judgment is reversed and here rendered for appellants. As to the other lands adjudged to all of the appellees except Garrison, the evidence does not show that any of the appellees except Coon Warren has any interest therein, but the judgment in favor of Hunter and Sullivan, jointly with Warren and wife, does not affect the rights of appellants and will not be disturbed.

The judgment will be affirmed in part and reversed and rendered in part, accordingly.

                    *Affirmed in part; reversed and rendered in part.*
Writ of error refused.