RELIANCE INS. CO. OF PHILADELPHIA v. DALTON. (No. 5401.)

(Court of Civil Appeals of Texas. Austin. March 17, 1915.)

1. INSURANCE ⟨388—CONSTRUCTION OF POLICY—STIPULATIONS AVOIDING POLICY—PAROL EVIDENCE.

Parol evidence is admissible to show that an insurance company has lost its right to invoke a stipulation in the policy, avoiding it if insured shall procure other insurance without the consent of the company indorsed thereon,

by subsequent contract, by waiver, or by estoppel.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1018; Dec. Dig. ⟨383.]

2. INSURANCE ⟨668—ACTION ON POLICY—QUESTIONS OF FACT.

In an action on a fire policy, providing that the policy should be void if assured should procure other insurance without the consent of the company indorsed thereon, evidence held sufficient to justify the submission to the jury of the questions of consent, waiver, and estoppel.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. ⟨668.]

3. INSURANCE ⟨669—ACTION ON POLICY—INSTRUCTIONS—WAIVER.

In an action on a fire policy, voidable if assured should procure other insurance without the company's consent, an instruction that if plaintiff had told an employé of defendant's agent that he had taken out additional insurance and intended to take out more and such employé did not object thereto, or if she had told plaintiff that no notice was needed, such facts would constitute a waiver, was misleading in omitting the restriction that the employé must have believed that the question of plaintiff's right to take out additional insurance was at that time presented to her for action.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1771–1784; Dec. Dig. ⟨669.]

4. INSURANCE ⟨669—ACTION ON POLICY—INSTRUCTIONS.

In an action on a fire policy, void if assured took out additional insurance without the company's consent, it was error to refuse an instruction that notice by plaintiff to the insurer of an intention to take out additional insurance in the future, uncertain in time and amount and dependent on certain conditions and contingencies, would not constitute notice or waiver and estoppel.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1771–1784; Dec. Dig. ⟨669.]

5. CONSTITUTIONAL LAW ⟨43—RIGHT TO ASSAIL STATUTE—FOREIGN INSURANCE COMPANIES.

A foreign fire insurance company cannot assail the constitutionality of Rev. St. 1911, art. 4876, empowering the state insurance board to make regulations whereby an insurance company is prohibited from stipulating that additional insurance on certain property cannot be taken out without its consent, since by the terms of the statute foreign companies are deemed to have consented to its provisions.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 41; Dec. Dig. ⟨43.]

6. INSURANCE ⟨311—ASSIGNMENT—CLASSIFICATION.

Where the owner of a school building took out insurance thereon with the understanding that the policy should not be a co-insurance one, an assignee of the policy could not claim that the building was not properly classified and that the provisions in the policy avoiding it if additional insurance was taken out without the company's consent were invalid.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 704–708, 762, 781, 827, 841, 874, 890, 903; Dec. Dig. ⟨311.]

Error from District Court, McLennan County; Richard I. Munroe, Judge.

Action by Crate Dalton against the Reliance Insurance Company of Philadelphia.

---

⟨For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Judgment for plaintiff and denial of a new trial, and defendant brings error. Reversed and remanded.

Wm. Thompson, of Dallas, and Jno. S. Patterson, of Austin, for plaintiff in error. Williams & Williams and Witt & Saunders, all of Waco, for defendant in error.

KEY, C. J. Crate Dalton, as plaintiff, bought this suit against the Reliance Insurance Company of Philadelphia, as defendant, and sought to recover upon a fire insurance policy for $5,000, issued on May 17, 1912, on the Woman's Building of the Texas Christian University, in the city of Waco. The policy was issued in favor of Otto Stolley and others, but had been duly transferred to the plaintiff, who was the owner of the building at the time it was destroyed by fire on November 11, 1912.

The defendant answered by general and special exceptions, a general denial, and a special plea alleging, among other things, that the policy was void because the plaintiff had taken out other insurance on the property without the knowledge or consent of the defendant. The plaintiff replied to the latter plea and averred that the stipulation in the policy referred to was contrary to law and null and'void, because of the fact that the state insurance board had placed the property in question in a classification known as co-insurance, and that under the rules and regulations adopted by that board the contract prohibiting additional insurance without the consent of the defendant was void. The defendant replied to that plea by a general demurrer, special exceptions, a general denial, and a special plea in which it was alleged, among other things, that the act of the Legislature authorizing the insurance board to make the rules and regulations pleaded and relied on by the plaintiff was unconstitutional and void.

Allan D. Sanford, as trustee for the defendant and other insurance companies, filed a plea of intervention, alleging that Otto Stolley and others had a mortgage on the property, and that the policy sued on was payable to them as their interest might appear; that the defendant had paid the mortgagees $2,005.74 and was subrogated to the interest of the mortgagees, which was evidenced by certain notes and liens which had been assigned to him as trustee for all of the companies having policies upon the property, and asked that he be subrogated to all the rights of Otto Stolley and others, and that, if the plaintiff recovered, he have judgment against him for the use of the defendant for the amount paid upon the policy, and that it be credited upon any judgment the plaintiff might obtain. There were some other pleas which we deem it unnecessary to refer to.

The court overruled all exceptions. The case went to trial before a jury, and resulted in a judgment in favor of the plaintiff against the defendant for $5,000 and in favor of Sanford, as trustee, for $2,005.74 as a credit on the judgment for the plaintiff, leaving a net judgment in favor of the plaintiff for the balance. The defendant's motion for a new trial was overruled, and it has brought the case to this court by writ of error.

Though the defendant in the court below has become the plaintiff in error in this court, and the plaintiff in that court is the defendant in error in this, in the further progress of this opinion the plaintiff and defendant in the trial court will be designated as "appellant" and "appellee" in this court. With this explanation of the case, we shall now proceed to a consideration of the questions which we deem it necessary to decide.

[1] 1. Appellant complains of the action of the trial court in refusing to give a requested instruction directing a verdict for it. The contract of insurance, which is the policy sued on, limits the total amount of insurance to $15,000 and stipulates that the entire policy shall become void if the assured shall procure other insurance without the written consent of the company indorsed upon or added to the policy. The uncontradicted proof shows that the plaintiff procured other insurance upon the property, amounting to $10,000, without the written consent of the defendant, and therefore it is contended that the policy was void and the plaintiff not entitled to recover. Whatever may be the decisions in other jurisdictions, we regard it as settled in this state, in accordance with the weight of authority, that it may be shown by parol evidence that an insurance company has lost its right to invoke such a stipulation in the contract of insurance in either of three ways, which are: (1) By subsequent contract; (2) by waiver; and (3) by estoppel. Such, in effect, was the ruling of this court in British American Assurance Co. v. Francisco, 123 S. W. 1144, as to the question of parol waiver; and, by analogy, the same rule would apply as to subsequent contract or estoppel. In fact, in the law of insurance, estoppel and a waiver are often treated as one and the same, though the text-writers make a distinction between them. The case cited was approved by the Supreme Court, and therefore the law is settled against appellant's contention in this regard.

[2] It is also contended on behalf of appellant that the testimony relating to the questions of consent to the additional insurance and of waiver or estoppel was not sufficient to justify the court in submitting either of those questions to the jury, and that therefore appellant's request for an instructed verdict should have been granted. In view of the testimony given by the appel-

lee to the effect that he told appellant's agent Hays that he had procured the additional $10,000 insurance, we overrule that contention, although other testimony given by the same witness may tend to impair the force of that testimony.

2. Appellee testified that before procuring the additional insurance, and while consulting Miss Johnson, one of appellant's agents, about another matter, he told her that he intended to take out additional insurance upon the property as certain improvements then in progress or contemplated should progress, and stated that Miss Johnson requested him to place such additional insurance with her firm, known as Hays Bros. He also testified, as before stated, that he notified Hays before the fire that he had procured the $10,000 additional insurance. He stated that he met Hays on the street and told him of such additional insurance, and that Hays told him that he had better come to the office, as he did not regard such business as transacted unless it was done in the office. He also stated that he told Miss Johnson that he might increase his insurance to $30,000, and that she still insisted on the additional insurance being placed with her firm, and stated that his policies were what are known as co-insurance policies. The proof shows that under a co-insurance policy additional insurance is not prohibited. Both Hays and Miss Johnson denied having had any such conversations with and making any such statements to appellee. In charging the jury the trial court did not undertake to define the terms "waiver" and "estoppel," nor explain to them what facts would or would not constitute either; but, after briefly stating the nature of the suit, instructed the jury as follows:

"You are instructed that if you believe from the evidence that the plaintiff, Crate Dalton, after the policy sued on herein had been issued and transferred to him, gave notice or procured the giving of notice by the firm of Friedlander & Luedde to the firm of Hays Bros. of the writing or procuring of other policies or contracts of insurance on the property covered by the policy herein sued on by said firm of Friedlander & Luedde, or if you believe from the evidence that the said firm of Hays Bros., through Miss Johnson, waived the giving of notice to the firm of Hays Bros. of the acquiring by him, the plaintiff, of other and additional policies or contracts of insurance on the property covered by the policy of the defendant herein, then in either event you will return a verdict for the plaintiff, and, unless you so find from the evidence that such was the case, you will return a verdict for the defendant."

[3] The balance of the court's charge related to the burden of proof, advised the jury that they were the exclusive judges of the facts proven, etc., and gave two forms for use as a verdict. The court also gave the following instruction, requested by the plaintiff:

"Gentlemen of the jury, you are further instructed that if you find from the evidence that the plaintiff at any time after the issuance by Friedlander & Luedde of the Firemen's Fund policy (which was on the 17th day of September, 1912), and prior to the 6th day of November, 1912, told Miss Johnson in substance that he had taken out $5,000 additional insurance and that he was going to take further additional insurance on said property in a short time, and that Miss Johnson, acting for the firm of Hays Bros., made no objection thereto, then, if you so find, you will find for the plaintiff, or if you believe from the evidence that Miss Johnson, acting for said firm of Hays Bros., at any time between the 17th day of September and 6th day of November, 1912, told the plaintiff, in substance, that this was a co-insurance risk, and that there was no need for notice of additional insurance, and that he relied on said statement fully, then, if you so find, you will find for the plaintiff."

[4] The defendant requested, and the court refused to give, the following special charge:

"Gentlemen of the jury, you are instructed that notice by the assured to the defendant of an intention to take out additional insurance in the future, uncertain in time, uncertain in amount, and depending upon uncertain conditions, and depending on a future and uncertain improvement and enhancement in the value of the property, will not constitute a notice of the taking of other insurance nor a waiver or an estoppel of the conditions of the policy against additional insurance."

The refusal to give this latter charge forms the basis of one of appellant's complaints, and we sustain that complaint. New Orleans Insurance Ass'n v. Griffin & Shook, 66 Tex. 232, 18 S. W. 505. As before stated, in the main charge the court did not attempt to define the terms "waive" or "waiver," but the special charge given at the request of the plaintiff, in effect, told the jury that the facts therein referred to would constitute a waiver, and entitle the plaintiff to recover. That charge was not correct and was calculated to mislead the jury, because it omitted the restriction and qualification which would have been supplied by appellant's requested instruction. In other words, if what occurred between appellee and Miss Johnson did not apprise her of the fact that he intended to procure additional insurance that he would not be entitled to without appellant's consent, but merely led her to believe that, on account of additional improvements which he contemplated making, it was his intention to procure additional insurance because of the increased value of the property, and also led her to believe that the question of his right to take out such additional insurance would come up in the future, and was not then presented for action by her, then her failure to object was neither proof of consent, waiver, nor estoppel.

[5] 3. But it is insisted on behalf of appellee that the stipulation in the policy concerning additional insurance is void, because of the fact that the property insured was so classified by the actuary of the state insurance board as to render it what was known and classified as co-insurance property, upon which class of property the rules and regulations of the insurance board prohibited

contracts limiting the amount of insurance, etc. Though the statute here involved has been repealed, it was in force at the time of this transaction. Appellant contends, however: (1) That the statute referred to, which conferred upon the state insurance board the power to prescribe the terms and conditions of contracts of insurance, constituted a delegation of legislative power, and was therefore unconstitutional and void; and (2) that the stipulation in the policy here involved prohibiting additional insurance did not contravene that statute, or any rule or regulation of the insurance board. Counsel for appellant have cited an array of authorities and made a forcible argument upon the proposition that the statute referred to was unconstitutional for the reason that it undertook to delegate to the state fire insurance board powers which could only be exercised by the Legislature. In a proper case the authorities and argument referred to would be persuasive, if not convincing, and might accomplish the desired purpose; but appellant is a foreign corporation and can do business in this state only upon such terms as the state deems proper to prescribe, and the statute now under consideration contains a provision to the effect that every fire insurance company, etc., then having or subsequently procuring authority to transact business in this state, shall be deemed as consenting to the terms and provisions of the statute which appellant attempts to assail in this case. R. S. art. 4876. In Waters-Pierce Oil Co. v. State of Texas, 177 U. S. 28, 20 Sup. Ct. 518, 44 L. Ed. 657, the Waters-Pierce Oil Company assailed the validity of an anti-trust statute of this state upon the ground that it was unconstitutional and void, but the Supreme Court held that, as the company was a foreign corporation, and as the state had prescribed, as a condition upon which it obtained its permit to do business in the state, that it must accept the terms of the statute there assailed, it could not avail itself of the defense interposed. In other words, it was held in that case, as it had been held in others, that a wide distinction exists between the rights of a foreign corporation and a private citizen or a domestic corporation, and that, as a foreign corporation has no right to transact domestic business within the borders of a state without first obtaining permission from that state, the latter can impose whatever conditions it deems proper, although such conditions might, if an attempt was made to apply them to an individual citizen, be held to contravene constitutional limitations.

[6] So, in this case, as appellant was transacting a domestic business within this state, we think it must be held that it had consented to and was bound by the statute referred to and whatever was done by the insurance board under authority of that statute. However, we are of opinion that, as applied to the facts of this case, that statute and the rules and regulations of the insurance board do not render void any provision of the policy here involved. The proof shows that the building was erected and formerly used as a dormitory in connection with a college; that the main college building had been destroyed by fire, and the college moved from Waco to Ft. Worth, and thereafter, and up to and including the time of the issuance of the policy here involved, the dormitory building when not vacant was used as a private residence, and it was so occupied and used at the time of the issuance of the policy. The proof also shows that school buildings were placed by the fire insurance board in what was known as the co-insurance classification, by which the assured was required to maintain a certain amount of insurance, and, if he failed to do so, he became a co-insurer with the company on his property. Appellee contends that as to property within that classification the regulations of the fire insurance board do not permit the making of contracts prohibiting additional insurance, while it is conceded that private residences were placed within a classification which permitted the making of such contracts. The proof shows that at the time the policy was written J. B. McCauley, one of the owners of the building, told appellant's agent with whom he was negotiating for insurance, in substance, that they did not desire a co-insurance policy; that they wanted $15,000 of insurance and desired it so written that if a loss was sustained they could collect the full amount, and did not want it so written that they would be carrying a part of the loss. As before stated, it was shown that at the time referred to the building was occupied as a private residence, and for no other purpose. In view of these facts, we hold that appellee, who claims under McCauley and the other owners of the property at the time the contract of insurance was made, is precluded from asserting that the building was not properly classified by the agent who issued the policy; and likewise precluded from questioning the validity of the stipulation prohibiting additional insurance.

4. It is contended on behalf of appellant that appellee's pleading was not sufficient to authorize the court to submit to the jury the question of waiver; and, while we are not disposed to sustain that contention, we deem it proper to suggest that the pleading referred to be so amended as that if appellee desires it will present clearly and distinctly the questions of consent to the additional insurance, and of waiver of the provision of the contract referred to, and of such estoppel as will preclude appellant from availing itself of such provision.

We also suggest that if upon another trial the case is submitted to a jury, and if the testimony presents the issue of waiver or estoppel, or both, the court define those terms in its charge to the jury. While, as

before stated, some courts have made no distinction between waiver and estoppel, and, as applied to insurance contracts, have treated them as convertible terms, still, upon principle and the weight of authority, we think they are distinguishable and should be so considered and applied; and in support of our view we copy from Cyc., that most excellent digest of every phase of the law, as follows:

"While waiver belongs to the family of estoppel, and the doctrine of estoppel lies at the foundation of the law of waiver, they are nevertheless distinguishable terms. It is difficult to make a distinction between waiver and estoppel which will give to each a clear legal significance and scope, separate from and independent of the other, as they are frequently used in the cases as convertible terms, especially as applied to the law of insurance contracts and in the avoidance of forfeitures. There are, however, several essential differences between the two doctrines. Waiver is the voluntary surrender of a right, estoppel is the inhibition to assert it from the mischief that has followed. Waiver involves both knowledge and intention, and estoppel may arise where there is no intent to mislead; waiver depends upon what one himself intends to do, estoppel depends upon what he caused his adversary to do; waiver involves the acts and conduct of only one of the parties, estoppel involves the conduct of both. A waiver does not necessarily imply that one has been misled to his prejudice or into an altered position, an estoppel involves this element. Estoppel results from an act which may operate to the injury of the other party, waiver may affect the opposite party beneficially. Estoppel may carry the implication of fraud, waiver does not. Estoppel may arise as between consistent remedies for waiver by election to operate as a bar, the remedies must be inconsistent. A waiver may be created by acts, conduct, or declarations insufficient to create a technical estoppel. The most general distinction lies in the fact that the term 'waiver,' besides implying an intention on the part of a party to relinquish a right which is not necessarily present in estoppel, refers only to the act or consequence of the act of the party against whom the waiver is sought to be enforced, regardless of the attitude assumed by the other party; whereas estoppel arises where, by the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy. The distinction is more easily preserved in dealing only with express waiver; but where the waiver relied upon is constructive, or merely implied from the conduct of a party, irrespective of what his actual intention may have been, it is at least questionable if there are not present some of the elements of estoppel." 40 Cyc. p. 255 et seq.

An interesting discussion of the distinction referred to may also be found in vol. 3 Cooley's Briefs on the Law of Insurance, beginning on page 2459.

Because of the action of the trial court in refusing to give the requested instruction heretofore set out and discussed, the judgment is reversed, and the cause remanded.

Reversed and remanded.