NORTH RIVER INS. CO. v. CORSICANA
WAREHOUSE CO.   (No. 6919.) *

(Court of Civil Appeals of Texas.   Austin.
Feb. 3, 1926.   Rehearing Denied
Feb. 24, 1926.)

1. Insurance ⊚�19 558(4)—Proofs of fire loss
held waived where insured offered to furnish
such proofs on basis that total amount of
policy was due and forms were never fur-
nished except on basis of application of ad-
justment average clause.

Proofs of loss under policy of fire insur-
ance held waived, where insured offered to fur-
nish such proofs on basis that total amount of
policy was due and called for forms which were
never furnished except on basis of insurer's
contention that adjustment average clause was
applicable, which forms insured properly de-
clined to execute.

2. Insurance ⊚�19 579—Agreement of adjuster
waiving right to have distribution average
clause applied to loss under policy held with-
out consideration, where insured gave up no
right against insurers.

Agreement by adjuster of insurers, waiv-
ing right to have distribution average clause
applied to loss under policy of fire insurance,
held without consideration, where insured gave
up no right that it had against insurers and
received under adjustment more than it was
entitled to receive if distribution average clause
were applied.

3. Insurance ⊚�19 133(1).

Regulations of insurance commission re-
quiring distribution average clause to be at-
tached to policies of fire insurance are binding
on insurance companies.

⊚�19For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted April 7, 1926.

**4. Insurance ⬀6—Fire policy expressing intention of parties is binding on insurer, regardless of whether it violated rules of insurance commission (Vernon's Sayles' Ann. Civ. St. 1914, art. 4896).**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4896, making company issuing policy without authority liable to policy holder in same manner as though company was authorized to issue policy, if fire policy expressed intention of parties it would be binding on insurer, regardless of whether it violated rules of insurance commission.

**5. Insurance ⬀143(3)—Insurer held entitled to have.fire policy reformed to contain distribution average clause in accordance with its intention to issue such policy in conformity with requirements of insurance commission.**

Insurer *held* entitled to have fire policy reformed to contain distribution average clause in accordance with its intention to issue such policy in conformity with requirements of insurance commission, where policy was issued in renewal of former policy containing that stipulation, and clause was not attached to policy through mistake, and policies of other companies on insured's property contained such clause; insured suffering no loss by reason of mistake.

On Motion for Rehearing.

**6. Appeal and error ⬀268(4).**

Findings of fact of trial court might be reviewed on appeal under due assignments of error, though no exception was taken thereto, where judgment was excepted to.

Error from District Court, Navarro County; Hawkins Scarborough, Judge.

Action by the Corsicana Warehouse Company against the North River Insurance Company. Judgment for plaintiff, and defendant brings error. Reformed and affirmed.

Prince & Taylor, of Corsicana, and Thompson, Knight, Baker & Harris and Pinkney Grissom, all of Dallas, for plaintiff in error. Richard Mays, of Corsicana, for defendant in error.

McCLENDON, C. J. Appellee sued appellant upon a policy of fire insurance for $4,000 covering a cotton warehouse in Corsicana. The case was tried to the court, and judgment was rendered for appellant for the full amount of the policy. The writ of error is to review this judgment. The parties will be designated appellant and appellee.

The contentions in the case are substantially as follows:

Appellant contends (1) that the evidence conclusively shows that it is entitled to have the policy corrected on the ground of mutual mistake and to have attached thereto a rider known as "Distribution Average Clause," which would make the liability under the policy and the loss sustained amount to $1,-135.98; and (2) that no recovery can be had because there was no proof of loss as required by the policy.

Appellee contends that there was a settlement and adjustment of the loss for the full amount of the policy, subsequently to the fire.

The facts. pertinent to the issues thus raised are in substance the following: The warehouse in question was a one-story brick building about 250 feet square, divided into five compartments each 50 feet in width and separated by fireproof partition walls. There was no difference in the value of the separate compartments, except that each of the end compartments was charged with the entire outer wall and one-half of a partition wall; whereas, the interior compartments were each charged with one-half of the partition wall on either side, amounting, of course, to one partition wall chargeable to each interior compartment as against a wall and a half charged to the end compartments.

Under the rules of the state fire insurance commission, the building came within a classification which required that blanket policies written thereon should contain what is denominated the "Distribution Average Clause," the effect of which was that the total amount insured by the policy should be distributed among the several divisions of the building in the proportion that the value of each subdivision thereof should bear to the aggregate value of the entire subject insured. At the time of the fire, appellee held altogether $12,000 insurance on the property, which was distributed between four companies, including appellant; the other policies being one for $4,000 and two for $2,000 each. Each of the other policies had attached to it a rider containing the distribution average clause, but no such rider was attached to the policy in suit. The evidence in this regard is without contradiction and is embraced in the following finding of the trial court:

"The court finds that the Corsicana Warehouse Company constructed its plant some time in the fall of 1914, and that it is engaged in the business of a cotton warehouse, and has been since it was organized. That the same year it was constructed said company, hereinafter called the plaintiff, took out an insurance policy in the defendant company, and that this occurred before the present manager took charge of said company, or any of its present officers were in control of same, except G. M. Gibson, President. That thereafter each year previous to the expiration of the original policy and of the ones succeeding it, all of said policies being for a term of one year, the defendant insurance company would make out a new policy for the same amount of insurance and mail the same to the plaintiff. That the plaintiff never at any time requested a renewal of any of said policies. That in 1920 a policy was mailed to the plaintiff by the defendant, which contained an equal distribution clause, and was similar in amount of insurance to the ones preceding it. That the plaintiff's agents never read any of said policies, but merely accepted the same and put them in their safe, and

paid the premiums on all of them. That the law or ruling of the insurance board authorizing the incorporation of an equal distribution clause in insurance policies on property of this nature was passed in 1917. As to whether any of the policies previous to the one issued in 1920 contained an equal distribution clause, the evidence does not disclose. At the expiration of the policy issued in 1920, which expired in the fall of 1921, the defendant insurance company, without any request from the plaintiff made out a new policy for the same amount of insurance and mailed the same to the plaintiff, whose agent accepted same without reading it, and placed it in its safe, and paid the premium thereon. The plaintiff did not know that the insurance policy issued in 1920 contained an equal distribution clause, and in fact it never heard of such a clause until after its loss in the fall of 1922.

"About three weeks after the insurance policy was issued in 1921, on which this suit is based, defendant's agent received a letter from defendant company inquiring why the equal distribution clause had not been attached to said policy; thereupon defendant's agent, without any knowledge whatever of the plaintiff, or its agents, prepared an equal distribution clause, in triplicate, one of which was placed in the agent's files, and two of which were sent to the home office of the defendant company, but the agent intended to send one copy to the plaintiff, who was insured under said policy, but did not do so, and the plaintiff never knew or heard of this action of the defendant's agent in making out an equal distribution clause to be attached to the original policy until after the loss which destroyed plaintiff's property, approximately one year later."

The fire occurred on October 13, 1922, and shortly thereafter one Cole, a representative of the Bates Adjustment Company, went to Corsicana for the purpose of adjusting the loss. He represented each of the four companies involved. The fire did considerable damage to one of the end compartments, designated compartment E, and there was a small damage to the adjoining compartment D. Appellee and the adjuster each had a contractor to estimate the damage. That of the former placed the amount at $10,590; whereas, the latter's placed the amount at $7,896. After some negotiation, the amount of the loss was finally adjusted at $6,271.94. This figure was arrived at by the following method: The adjuster's contractor placed the value of the entire building at $42,206.77, that of the two end compartments at $9,158.54 each, and that of the interior compartments at $7,963.23 each. He estimated the damage to the partition wall between compartments D and E at $1,000, whereas appellee's contractor estimated this damage at $776.75, or 25 per cent. of $3,107, his entire valuation on the wall. The damage to compartment D, other than that to the partition, was evidently inconsequential and was placed at $36. The agreed amount of damage to this compartment was $536, which was arrived at by taking one-half of the highest estimate of damage to the wall and adding the $36 damage. Under the proportionate values of the several compartments above the insurance on compartment E applying the distribution average clause. was $216.99+ per $1,000 of the face of the policies. The court found the value of the entire building to be $60,000, but this finding would not benefit appellee in any way under the distribution average clause, since the valuation of the partition wall by the adjuster's contractor was higher than that of appellee's; and therefore placing a greater valuation on the entire building would lessen the difference in the proportionate values of the external and internal compartments. It will thus be seen that the total amount recoverable in any event under the three concurrent policies on compartment E was $1,735.94 and on compartment D under all the policies $536. To this was added $4,000, the full face of appellant's policy; thus making in all $6,271.96. There was no theory under which appellee could recover more than this aggregate amount, which all agreed was much less than the actual loss.

There was conflict in the testimony between the adjuster on the one side, and the president and manager of appellee on the other, as to whether the adjuster agreed that appellant would pay the full amount of its policy. The trial court found the agreement was made as appellee contends; but the question becomes unimportant in the light of the other conclusions we have reached. The $2,271.94 was subsequently paid by the other companies. However, in forwarding the proof of loss before payment, the letter of transmittal contained the following clause:

"These proofs are submitted, however, with the distinct understanding that if at a later date final adjustment of the North River policy is based on the application of the distribution average clause, that you will refund the above three companies the sum of $22.33 per thousand dollars insurance. The above companies elected to make this proposition, not feeling that they wanted to withhold any money which you were entitled to, until the final disposition of the North River policy."

These proofs were executed and payment was made accordingly. Mr. Gibson, the president of appellee company, testified that he held up these proofs for a little while, "because I didn't want to make any mistake, and I finally accepted the others as having to do so."

[1] With reference to the proof of loss, it is quite clear that this was waived by appellant. The evidence shows an agreed amount of loss for the purpose of fixing the amount of liability. This agreed amount, while below the estimate of the contractor for either party, was| the total amount that could be recovered whether or not the adjustment average clause applied to appellant's policy. If the clause applied, then the

amount of recovery was the total amount which the policy covered on compartment E, plus one-third of $536, the loss on compartment D. If the clause did not apply, then the total amount of appellant's policy was due because the loss was greater than the total amount of insurance covered by all of the policies. The evidence shows that there was some correspondence between appellant and appellee, in which the latter contended that the total amount of the policy was due, and the former that the adjustment average clause applied. In this correspondence appellee offered to furnish proofs of loss and called for forms, which were never furnished except on the basis of the application of the adjustment average clause, and these appellee properly declined to execute. The record clearly shows that after the adjustment no controversy whatever remained regarding the amount of the loss, and that appellee was always willing to comply with every requirement of the policy. The proof of loss was not executed simply because appellant contended for the application of the distribution average clause; whereas, appellee denied this contention.

[2] Assuming the correctness of the trial court's finding that the agreement was made as alleged, it was totally without consideration. The undisputed evidence clearly shows that the agreement, if made, amounted to nothing more than a waiver on the part of Cole of appellant's right to have the distribution average clause apply to the policy. For this waiver there was no consideration whatever. Appellee gave up no right or advantage that it had against either the appellant or any of the other companies involved. The evidence shows without controversy that the agreement as to the amount of the loss was such only in form. The amount so fixed was the entire amount of recovery under all of the policies which appellee was entitled to under the highest estimate made of the actual loss, and even if the distribution average clause should be held not to apply to the policy in question. It was only after this fact was ascertained that the officers of appellee agreed to the adjustment. Instead of giving up anything or making any concession, the appellee got under this adjustment $22.33 per thousand of insurance in excess of what it would be entitled to receive from the other companies in case the distribution average clause were applied to the policy in suit. As shown above, the other companies in making payment stipulated for the refund of this amount, in case the distribution average clause should be applied to appellant's policy. We think it is clear, therefore, that the agreement of Cole, if it had the effect contended for by appellee and found by the trial court, was without consideration to support it, and was therefore unenforceable.

In this same connection appellant further contends that Cole had no authority to make such agreement. This contention is rested upon the proposition that an insurance adjuster has no implied authority to bind his principal except with reference to the amount of the loss, and his authority does not extend to the question of the extent of the principal's liability under the contract. We find it unnecessary to decide this question. Appellant cites the following authorities: Bond v. Ins. Co., 88 S. E. 389, 77 W. Va. 736; Colby v. Ins. Co., 17 S. E. 303, 37 W. Va. 789; Wood on Insurance, p. 456. Appellee cites to the contrary: Roberts v. Ins. Co., 72 S. W. 144, 94 Mo. App. 142; Ins. Ass'n. v. Miller, 2 Willson, Civ. Cas. Ct. App. § 332; Ruthven v. Ins. Co., 71 N. W. 574, 102 Iowa, 550; Flaherty v. Ins. Co., 46 N. Y. S. 934, 20 App. Div. 275; Bank v. Ins. Co., 66 N. W. 138, 64 Minn. 96; N. Y. v. Ins. Co., 39 N. Y. 45, 100 Am. Dec. 400.

[3] This brings us to the main issue in the case, namely whether appellant was entitled to have the policy reformed so as to attach thereto the distribution average clause. We think the facts clearly establish this right as a matter of law. The intention of appellant to attach the clause is apparent, and the failure to do so was due originally to an oversight. The subsequent failure to forward the clause to appellee after appellant's agent discovered the mistake was due to an error which occurred in the agent's office. Under the regulations of the insurance commission, the appellant was required to attach the clause to the policy. These regulations were binding on appellant. Ins. Co. v. Thomas (Tex. Civ. App.) 264 S. W. 589, and authorities there cited. Appellee contends that the Fire Insurance Commission Act (Acts 1913, c. 106 [Vernon's Sayles' Ann. Civ. St. 1914, art. 4876 et seq.]) is unconstitutional, and therefore was not binding upon it, although binding upon appellant. The question of the constitutionality of this act has been raised in a number of cases, but the courts have never found it necessary to decide it. With reference to foreign insurance companies doing business in Texas, it is held that they are bound by the act, regardless of whether it is constitutional. See Ins. Co. v. Dalton (Tex. Civ. App.) 178 S. W. 966; Ins. Co. v. Gomillion (Tex. Civ. App.) 178 S. W. 1050; Ins. Co. v. Thomas, above; Adams-Childers Co. v. Ins. Co. (Tex. Civ. App.) 232 S. W. 339, s. c. (Tex. Com. App.) 246 S. W. 365.

[4] Whether or not the act is constitutional, and therefore binding upon appellee, is wholly immaterial in this case. The Insurance Commission Act itself provides (Vernon's Sayles' Ann. Civ. St. 1914, art. 4896) that if a company shall issue a policy without authority and loss shall occur thereunder, it shall be liable to the policy holder in the same manner and to the same extent as if the company had been authorized to issue the policy, although it was issued in

(281 S.W.)

violation of the act. Under this article, if the policy expressed the intention of the parties, it would be binding on the insurance company, regardless of whether it violated the rules of the insurance commission. Ins. Co. v. Kitchen (Tex. Com. App.) 271 S. W. 893.

[5] The record clearly shows, however, that the intention of the insurance company was to issue a policy with the adjustment average clause attached in conformity with the requirements of the insurance commission; that the policy in question was issued in renewal of a former policy containing that stipulation; that the clause was not attached to the policy through mistake; that appellee's manager who received the policy through the mail never examined it or knew its contents; that the other policies covering the same building issued by other companies and written and accepted in the same manner contained the clause. Under these circumstances, we think it clear that the mistake was mutual and one against which equity will relieve. There is no evidence that appellee suffered any loss or detriment by reason of the mistake. On the other hand, it clearly appears that if the mistake had not been made the position of appellee after the fire would have been exactly the same as if the reformation prayed for be now allowed. We think the authorities amply sustain our views in this regard, and deem it necessary only to give the citations without discussion. Ins. Co. v. Hansen (Tex. Civ. App.) 258 S. W. 257; Williams v. Ins. Co. (C. C.) 24 F. 625 (opinion by Mr. Justice Miller of the U. S. Supreme Court); Farwell v. Ins. Co., 136 F. 93, 68 C. C. A. 557 (by U. S. Circuit Court, 5th Circuit); Hollin v Benefit Ass'n, 96 A. 71, 88 N. J. Law, 204; Hay v. Ins. Co., 77 N. Y. 235, 33 Am. Rep. 607; Palmer v. Ins. Co., 9 A. 248, 54 Conn. 488; Oil Co. v. Ins. Co., 28 N. Y. S. 45, 7 Misc. Rep. 695; Merriam v. Leeper, 185 N. W. 134, 192 Iowa, 587; Parchen v. Chessman, 142 P. 631, 146 P. 469, 49 Mont. 326; Avery v. Ins. Soc., 23 N. E. 3, 117 N. Y. 451; Clem v. Ins. Co., 29 Mo. App. 666.

Under the undisputed evidence, we hold appellant entitled to have the policy in suit reformed so as to contain the distribution average clause. Under this reformation appellant is entitled to recover $1,135.98, which amount should bear interest at 6 per cent. per annum from 60 days after October 20, 1922.

The judgment of the trial court is therefore reformed so as to provide that the appellee recover of appellant the sum of $1,135.98, together with interest thereon at the rate of 6 per cent. per annum from December 19, 1922, and all costs of the trial court; and as so reformed is affirmed. The costs of appeal are assessed against appellee.

Reformed and affirmed.

### On Motion for Rehearing.

[6] Appellee contended upon the original hearing that appellant was not in position to attack the trial court's findings of fact because no exception thereto was taken. The proposition is not well taken, and we overruled it without comment. The same contention is reiterated in appellee's motion for rehearing. It is now well settled by a long line of cases that:

"The judgment of the court, on trial without a jury, having been excepted to (as was done in this case) it was not necessary that exception be also taken to the conclusions of law and fact in order to secure their review on appeal under due assignments of error." Voight v. Mackle, 71 Tex. 78; Engineering Co. v. Turney, 203 S. W. 593, 109 Tex. 208; Thompson v. State, 56 S. W. 603, 23 Tex. Civ. App. 370; Bond v. Garrison, 127 S. W. 839, 59 Tex. Civ. App. 620; Brenton v. Peck, 87 S. W. 904, 39 Tex. Civ. App. 224; Connellee v. Roberts, 23 S. W. 189, 1 Tex. Civ. App. 419; Savage v. Umphries (Tex. Civ. App.) 118 S. W. 908; Life Ass'n v. Green (Tex. Civ. App.) 109 S. W. 1133.

The other grounds of the motion are sufficiently covered in our original opinion.

The motion is overruled.

Overruled.