GOODMAN v. W. S. PECK & CO.　(No. 1115.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 7, 1917. Rehearing Denied March 7, 1917.)

1. APPEAL AND ERROR ☞265(1) — RESERVATION OF GROUNDS OF REVIEW—EXCEPTION TO FINDINGS OF FACT — RULE OF COURT — STATUTE.

Rule 101 for the Courts of Civil Appeals, as amended June 25, 1913, provides that assignments of error or cross-assignments relating to any ruling or action of the trial court or trial judge which occur subsequently to the rendition of a final judgment in the case may be incorporated in the brief filed in the Court of Appeals without being included in the transcript. Held, that the object of the rule is to permit assignments of error to the action of the court after final judgment, and the findings of fact filed by the court within ten days after adjournment under Rev. St. art. 2075, can be assailed on appeal on the ground that the evidence will not support the findings, without the necessity of an exception thereto being first filed, though there was no motion for new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1536, 1538, 1544–1551.]

2. ALTERATION OF INSTRUMENTS ☞11(2) — SPOLIATION OF CONTRACT BY STRANGER.

A change in a contract of guaranty, effected by a stranger to the instrument, therefore only a spoliation, as contrasted with an alteration, did not defeat recovery upon the contract as actually made.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 61–66, 68–71.]

3. ALTERATION OF INSTRUMENTS ☞29 — CHANGE BY DEFENDANT — SUFFICIENCY OF EVIDENCE.

In suit on a contract of guaranty, evidence held to justify the trial court's finding that a change in the contract was in defendant's handwriting.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 259–263.]

4. STIPULATIONS ☞14(1) — CONSTRUCTION — AMOUNT OF INDEBTEDNESS—SUFFICIENCY OF EVIDENCE.

In an action on a contract of guaranty, the statement of facts, reciting that the pleadings were read, and that it was agreed by the parties that the amount alleged in plaintiff's petition was due by the debtor, was sufficient to place before the court the invoices sued on ; and the amount shown, with their dates, together with the contract of guaranty, was sufficient to warrant the trial court's finding for the amount, since the purpose of the recital of the

statement of facts that the pleadings were read must have been to show what was agreed to and the amount for which judgment should be rendered, all being submitted to the court as evidence under the agreement.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 24, 28.]

5. APPEAL AND ERROR ☞932(1) — PRESUMPTIONS FAVORING COURT BELOW.

On appeal any uncertainty as to the proper amount of recovery should be resolved in .favor of the judgment of the court below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3782.]

Appeal from District Court, Oldham County; D. B. Hill, Judge.

Suit by W. S. Peck & Co. against J. R. Goodman. From a judgment for plaintiff, defendant appeals. Affirmed.

Reeder & Dooley, of Amarillo, for appellant. W. E. Gee, of Amarillo, for appellee.

HUFF, C. J. The appellee, W. S. Peck & Co., instituted this suit against J. R. Goodman, on a guaranty contract, for goods sold T. L. Lipscomb, who was engaged in a mercantile business, alleging that the goods were sold Lipscomb in reliance upon the guaranty contract, on various dates, to wit, August 19, 1912, September 16, 1912, October 7, 1912, and November 7, 1912, aggregating the sum of $1,701.75, with a credit of $71.46, made December 31, 1913; that on the 13th day of May, 1913, T. L. Lipscomb was adjudged a bankrupt, and received his discharge in bankruptcy, and thereby was released from liability on the indebtedness for which the suit was brought. The appellant answered by general denial and non est factum as to the guaranty contract. The appellee replied by supplemental petition that, if there was any change in the contract of guaranty, it was immaterial, and was consented to by Goodman, and made for the sole purpose of making the contract speak the truth, setting out the circumstances under which the contract was made and those leading up to the alteration and how effected. The trial court filed findings of fact and conclusions of law as follows:

"W. S. Peck & Company v. J. R. Goodman. No. 170. In the District Court of Oldham County, Texas, August Term, 1916.

"In compliance with the request of the plaintiffs in the above entitled and numbered cause that the court file conclusions of facts and law in said cause, I, D. B. Hill, Judge of the District Court in and for Oldham County, Texas, situated in the Sixty-Ninth judicial district of Texas, do hereby certify that my conclusions of fact and law are as follows, to wit:

"(Explanation.—The words underscored in the contract and portion of contract hereinafter set out were written with pen and ink in the contract as introduced in evidence before me upon the trial of said cause.)

"Conclusions of Fact.

"First. I find that on the 14th day of March, 1912, the defendant, J. R. Goodman, signed the following contract, to wit:

" 'This guaranty, made this the *14th* day of *March, 1912*, between *T. L. Lipscomb* of Pot-

ter county, of the state of Texas, party of the first part, and W. S. Peck & Co., a copartnership composed of Wilber S. Peck and Herbert R. Peck, and Wilber S. Peck, Jr., all of the city of Syracuse, N. Y., party of the second part. Witnesseth, that whereas *T. L. Lipscomb* of *Amarillo*, county of *Potter*, state of *Texas*, engaged in the clothing business, is desirous of purchasing goods, wares and merchandise from the party of the second part; and whereas, to induce said sale or sales by said party of the second part to said *T. L. Lipscomb*, and as part of the consideration of making such sales, the said party of the first part has agreed to guaranty to the said party of the second part as hereinafter set forth: Now therefore, in consideration of the premises and one dollar ($1.00) in hand paid to said party of the first part, by said party of the second part, the receipt where of is hereby acknowledged, the said party of the first part does hereby guaranty to said party of the second part the payment of the price of all merchandise sold within three years from the date of this instrument including orders now on hand for future delivery by the said party of the second part to said *T. L. Lipscomb* of *Amarillo, Texas*, not exceeding however the sum of *$5,000.00 five thousand dollars*, at any one time, and further said party of the first part guarantees the payment of any liability or indebtedness arising from such sale or sales during said period, whether on open account or on negotiable or nonnegotiable instruments or renewals thereof with accrued interest, on which said *T. L. Lipscomb* is or may be directly or contingently liable, the renewal or extension of the time of payment of any of the aforesaid liabilities or indebtedness is hereby agreed to as is also any release, addition to or change of security. The application of any payments made to said party of the second part by said *T. L. Lipscomb* or for his benefit is hereby confirmed, as is also any and all accounts of said party of the second part in relation to such liability or indebtedness.

" 'All notices and demands whatsoever are hereby waived by the said party of the first part.

" 'This guaranty is a continuing one, binding said party of the first part, his heirs, executors, administrators and assigns; and in case of the death of the said party of the first part, this guaranty shall cover all transactions made previous to the time when the said party of the second part shall be actually informed thereof; nor shall the dissolution of the said second part, nor change of partners, nor change by incorporation or otherwise, affect this guaranty, which together with all liability thereunder shall inure to the benefit of the said party of the second part, its successors and assigns.

" 'In witness whereof, the said parties have hereunto set their hands and seals the day and year above written.　　T. L. Lipscomb.
" 'J. R. Goodman.
" 'W. S. Peck & Co.

" 'Witness: Don A. Crossett.'

"Second: I find that, upon the execution of said contract, same was mailed by T. L. Lipscomb to the plaintiffs and reached them by due course of mail.

"Third. I find that, upon receipt thereof by the plaintiffs, they returned same to T. L. Lipscomb, with instructions to him to have J. R. Goodman change same so as to insert the word 'J. R. Goodman' where the name 'T. L. Lipscomb' first appears in said contract.

"Fourth. I find that said contract was afterwards returned to the plaintiffs by due course of mail; and, when so received by them the second time, the first paragraph of said contract was changed so as to read as follows, to wit: 'This guaranty, made this the *14th* day of *March, 1912*, between *J. R. Goodman* of *Oldham* county, of the state of *Texas*, party of the

first part, and W. S. Peck & Co., a copartnership, composed of Wilber S. Peck and Herbert R. Peck, and Wilber S. Peck, Jr., all of the city of Syracuse, N. Y., party of the second part.'

"Fifth. I find that no changes were made in said contract other than those appearing in the paragraph above quoted, the word, 'T. L. Lipscomb' being erased with pen and ink and the word 'J. R. Goodman' being written therein, likewise the word 'Potter' being erased and the word 'Oldham' written therein, the words 'T. L. Lipscomb' and 'Oldham' having a line run through them with pen and ink and the words 'J. R. Goodman' and 'Oldham' being written with pen and ink.

"Sixth. I further find that the change in said contract was made by J. R. Goodman, the defendant in this cause, and that the word 'J. R. Goodman' in said paragraph showing said change was in the handwriting of the said J. R. Goodman, defendant.

"Seventh. I further find that, after the execution and delivery of said contract of guaranty to the plaintiffs, to wit, from August 19, 1912, to November 7, 1912, the plaintiffs sold and delivered goods to T. L. Lipscomb, there being various articles of goods, wares, and merchandise so sold, all on open account, aggregating the sum of $1,701.75.

"Eighth. I further find that T. L. Lipscomb was adjudged a bankrupt in the year 1913, and afterwards received his discharge in bankruptcy.

"Ninth. I find that the amount due the plaintiffs on the indebtedness incurred by T. L. Lipscomb from August 19, 1912, to November 7, 1912, after applying all credits thereon, including dividends received by plaintiffs from the estate of T. L. Lipscomb, through the bankruptcy court, is the sum of $1,630.29, which amount remains unpaid at this time.

"Tenth. I further find that said sum of $1,630.29 was due on February 2, 1913.

### "Conclusions of Law.

"Having found as a fact that the defendant made the change in the contract above set out, the changed contract became that of the defendant, and he is bound by its terms; and his plea of non est factum is untrue. The goods purchased by T. L. Lipscomb from the plaintiffs having been purchased after the execution of the said contract and in faith of and relying upon and on thereof by the defendant and during the period of time the same was in force, and the indebtedness being still unpaid, said Lipscomb having received his discharge in bankruptcy, the defendant is obligated to pay the plaintiffs the sum of $1,630.29, with interest thereon from February 2, 1913, at 6 per cent. per annum.                D. B. Hill,

"District Judge, 69th Judicial Dist. of Texas."

The assignments in this case are to the effect that the findings of fact by the trial court are not supported by the evidence. The appellees object to these assignments and present the proposition:

"In order to attack the findings of fact by the trial court, there being no motion for new trial, it was necessary for the appellant to file exceptions to the findings before he could assign error on the ground that the findings are not supported by the evidence."

The trial court adjourned on the 9th day of August, and findings were not filed until the 18th day of August. The appellant excepted to the judgment of the trial court, which is noted in the judgment entry. There is also a statement of facts brought up to this court in the record. Counsel for both appellant and appellees apparently contend there is a conflict of authority in this state on the proposition presented. We do not deem it necessary to go into a discussion of this matter or review the several cases cited. Under article 2075, R. C. S., the trial judge has ten days after adjournment of his court to file findings of fact and conclusions of law. It is said in Bond v. Garrison, 59 Tex. Civ. App. 628, 127 S. W. on page 844:

"The statute makes no provision for the presentation of these conclusions to the parties. It would be absurd to require either party to except in advance of the preparation and filing of the conclusions. It has been held that exceptions to the judgment when rendered is sufficient to support objections to the conclusions filed by the court."

[1] Rule 101 for the Courts of Civil Appeals, as amended June 25, 1913, provides:

"That assignments of error or cross-assignments relating to any ruling or action of the trial court, or trial judge, which occur subsequently to the rendition of a final judgment in the case, may be incorporated in the brief filed in the Court of Appeals, without being included in the transcript."

The object of the rule would appear to permit assignments of error to the action of the court after final judgment, and it occurs to us the findings of fact filed after adjournment could be assailed on the ground that the evidence will not support the conclusions so filed without the necessity of an exception thereto being first filed. Moody v. Bonham, 178 S. W. 1020. It seems to us that the inference to be drawn from the case of Craver v. Greer (Sup.) 179 S. W. 862, by the Supreme Court, is that, in order to attack the judgment of the trial court, whether because not supported by the law or facts, and to present assignments of error, it is not necessary to file special exceptions to the findings or file a motion for new trial, since the judgment is wholly the act of the court, rendered upon consideration of the evidence by the trial judge, while, if tried before a jury the error must be called to the attention of the trial court to entitle to a revision on appeal; also Wilkerson v. Stasney, 179 S. W. 669. We substantially so held in Walsh v. Methodist Church, 173 S. W. 241 (however, a writ of error has been granted in the latter case).

[2] Assignments from 1 to 11 present, in different form, that the evidence wholly failed to show that the guaranty contract was executed by J. R. Goodman, and to show that any of the indebtedness from Lipscomb to appellee was for goods sold under the terms and within the purview of the guaranty contract sued upon and in evidence. On the first proposition it will be noted the court found that the contract was made by J. R. Goodman, and that the words "J. R. Goodman" in the paragraph showing the change in the contract was in the handwriting of Goodman, and that, Goodman having himself made the change, the contract as changed became his, and that he was bound by its terms. The testimony of Goodman is that the interlineation was not his signature. T. L. Lipscomb testified he did not make the change.

W. S. Peck & Co., show by the evidence that they observed the mistake and returned the contract of Lipscomb to procure Goodman to make the change. Lipscomb returned it to appellee with the change made as requested. The letter of appellee to Lipscomb requested the change. According to the sworn statement of these witnesses, and the inference which appellant would draw from Goodman's testimony, no party to the instrument made the alteration. It would result, therefore, it was not an alteration within the meaning of that term. It was a change, effected by a stranger to the instrument, and was therefore only a spoliation, which would not defeat a recovery upon the contract as made. It is undisputed that Goodman signed it as a guarantor, and that appellees accepted it as a guaranty contract. On its face it shows it was a guaranty of any indebtedness within its terms made by Lipscomb with appellees. All parties signed it, and were therefore liable for the indebtedness which accrued under its terms. We think there is evidence supporting the finding of the court. The contract is dated the 14th day of March, 1912. On the 17th day of April, 1913, Messrs. Reeder & Dooley, by C. B. Reeder, attorneys in this case, wrote to W. S. Peck & Co.:

"Your favor of the 9th instant to J. R. Goodman, Wildorado, Texas, relative to amount due you by T. L. Lipscomb, is before us for attention and reply. While T. L. Lipscomb has not been able to meet his bills promptly as they became due he is solvent and will be able to pay each of his creditors without loss to any, and that within a reasonable time. Mr. J. R. Goodman's guaranty to you makes you secure, but of course the guaranty is not to be realized upon until you fail to get your money out of T. L. Lipscomb."

Reeder and Goodman testified substantially that Reeder was not representing Goodman at that time in any business matter. Reeder says that at that time he was representing Lipscomb, which was just before he was thrown into bankruptcy, and that he was handling his business. They both testified they had no recollection of the letter from appellee to Goodman, referred to in Reeder's letter. Reeder says he does not think he would have made a statement in that letter that was not absolutely correct. The letter itself shows he was answering a letter appellees had written Goodman, and that that letter was before him for "attention and reply." It was certainly calculated to induce appellees to believe that it came from Goodman, or was written by his authority. We believe the court was justified in finding that it was written by the authority of Goodman. In this letter he admits his liability on the guaranty after the assets of Lipscomb were exhausted. This was about a year after the alleged alteration. Goodman, in explaining why he first signed the instrument as originally drawn, says he did so because he saw it did not bind him or anybody else. If he caused Mr. Reeder to answer the letter from appellees, he then knew of the change be-

cause he recognized it did bind him on the guaranty. From the face of the letter the court was authorized to find it was a reply for Goodman. No one else had the right to deliver his letter for attention and reply to Reeder, so far as this record shows.

It is admitted by Goodman that he signed the guaranty contract and that his signature is attached to it. The duplicate which he kept was also before the court, which he admits he signed. Both these instruments which he signed were before the court, with his admitted signature, and the record shows the signatures, together with the interlineation of Goodman's name, were examined and testified about before the court. In one place Goodman testified:

"The name, J. R. Goodman (which was the name interlined), in the second line of it, seems to be similar to my signature; don't look much like this one (referring to the one which was signed at the bottom of the contract). I don't think that is my signature in smaller letters interlined in the contract."

Again he testified:

"I don't think that is my signature in the second line of the instrument. I said a while ago that it looked something like it."

The effect of appellee's testimony as to writing the interlineation is that he did not authorize appellee or any one else to write his name in the instrument. After he first signed it he did not think he saw it any more, and did not remember that he ever saw it any more. The court, after hearing this evidence, found Goodman did write his name into the instrument. It is asserted that a comparison of signatures alone is not sufficient to sustain the finding of the court. The most restrictive rule of the common law, under the standard of comparison used in this case, was satisfied. The case of Talbot v. Dillard, 22 Tex. Civ. App. 360, 54 S. W. 406, is relied upon by appellant. In that case the signature, admittedly genuine, was not on papers in any way connected with the subject-matter of the litigation then in hand. The court there said:

"Had they been competent for other purposes in the case, and the signatures admitted to be genuine, the comparison by the court or jury trying the case might properly have been made and due import given to it as evidence."

Here the admitted signatures were directly connected with the subject-matter of the case, and the party writing the signature admitted the interlined name "seemed to be similar to my signature." This was a comparison by the one who ought to know his signature, and this testimony as given before the court, with his own inspection, it appears to us ought to support the findings under the most rigid rule with reference to comparison. R. C. L. §§ 181, 182, Evidence, vol. 10.

[3] This evidence, under the circumstances, justified the court in his finding. By the process of elimination it is shown with reasonable certainty that Goodman did the writing. Appellee returned the contract to Lipscomb to

have Goodman make the very correction that was made. The letter transmitted with the instrument shows that fact. It was returned with the correction, as requested. Lipscomb testified he did not make the change. It was made, however, and the writing and the admitted signature to the instrument appellant admits are similar and looked something like his signature. There is no evidence to show that it looked like Lipscomb's writing, or any one's else writing. Goodman does not positively testify he did not write the interlineation. He simply testified he did not authorize appellee or any one else to write it. He tries to show that it is not his signature by circumstances. He "don't think" and "don't remember" that he saw it any more after he first signed it. Again, he says, "I don't think that is my signature." If he never wrote it he knew it was not his writing. He may have written it so as not to be his signature, and yet he may have written it. He may have written it so it only resembled his signature, and yet not be his signature in the sense that it was the usual signature used by him. He nowhere positively swears it was not his writing, and that he did not write it. Some one did, and the circumstances point to him as the person. We think the court's finding has evidence to sustain it.

The court's finding against appellant the amount adjudged is assailed because there is no evidence showing that it was such indebtedness on the part of Lipscomb as would fall under the guaranty. The contract signed by Goodman is dated March 14, 1912, by which he guaranteed the payment of the purchase price of all goods sold by appellees to Lipscomb for a period of three years from that date. The appellees attached to their petition and made a part thereof the invoices of sales which were of date August 19, 1912; September 16, 1912; October 7, 1912; November 7, 1912—total $1,701.75; and alleged a credit of $71.46, leaving a balance due, which was sued for, of $1,630.20. It is shown by appellee that all shipments made after March 14, 1912, were made in reliance upon the contract of guaranty in this case. Lipscomb testified he was indebted to appellee for goods in about the sum of $1,700. The statement of facts agreed to and approved show that after all preliminary matters had been disposed of by the court, and the pleadings of both parties read, the following evidence was admitted: Upon the trial before the court the record shows the following agreement was made by the parties:

"That T. L. Lipscomb owed W. S. Peck & Co. the amount sued for in plaintiff's petition, after all dividends were paid, and he was released from bankruptcy."

[4, 5] It appears that appellant contends that because Lipscomb, in testifying about the circumstances which induced the giving of the guaranty contract, stated that the indebtedness prior thereto was reduced to notes,

this might have been included in the court's judgment and therefore the contract, by its terms, would not cover such items. It is manifest from the pleadings no such item as notes given before the contract were sued for. It was for goods shown by the invoices attached to the pleadings, all showing that they were for goods sold after the contract, and therefore falling under its terms. When the amount of the several invoices are totaled, and the credit pleaded is taken from that amount, the remainder is the amount found by the court, plus the interest. The agreement in open court was that Lipscomb owed appellee the amount sued for in the petition, and not some other amount, or item. This is evidently an admission of the cause of action as sued for. The real question before the trial court, as is apparent from the record, was on the issue raised by the pleading of non est factum. The statement of facts reciting that the pleadings were read, and that it was agreed by the parties that the amount in plaintiff's petition was due by Lipscomb, we believe was sufficient to place before the court the invoices sued on, and the amount shown, with their dates, together with the contract, was sufficient to warrant the finding of the trial court. The purpose of reciting that the pleadings were read by the statement of facts must have been for the purpose of showing what was agreed to, and the amount for which judgment should be rendered. This was all submitted to the court as evidence under the agreement. If we should hold there is any uncertainty it should be resolved in favor of the judgment of the court. Byers v. Thacker, 42 Tex. Civ. App. 492, 94 S. W. 138.

We believe the case should be affirmed; and it is so ordered. Affirmed.