Roxa Squier, Respondent, *v.* Hanover Fire Insurance Company of New York, Appellant.

1. Fire Insurance — Oral Contract of Local Agents to Continue Risk and Renew it on Credit. Where a member of a firm of local fire insurance agents, authorized to countersign, issue and renew policies, agrees orally to continue an existing contract of insurance and issue a renewal or policy therefor, the insurer is bound although credit was given for the renewal premium.

2. Witness — Credibility. Where the insurer and its agents assume the position that the policy in suit had lapsed before the loss occurred, the insured may, for the purpose of attacking the credibility of the agents sworn upon the trial, ask them on cross-examination whether they have not stated, in substance, to third parties that they thought the loss would be adjusted and paid and that the insured would not lose the amount, and, in case of their denial, the insured may show that they had made such statements.

*Squier* v. *Hanover Fire Ins. Co.*, 18 App. Div. 575, affirmed.

(Argued March 16, 1900; decided May 1, 1900.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 28, 1897, affirming a judgment in favor of plaintiff

entered upon a verdict, and an order denying a motion for a new trial.

This action was brought to recover upon a policy of fire insurance alleged to have been renewed by a verbal contract between the plaintiff's husband, acting as her agent, and one of the firm of Horton Brothers, the agent of the defendant, made about ten days before the expiration of said policy, the premium to be paid and the policy called for within thirty days of the making of the alleged contract.

The facts, so far as material, are stated in the opinion.

*Horace McGuire* for appellant.    Horton Brothers were not authorized to make verbal contracts of insurance, and the alleged contract, if made, was outside the scope of their authority. (*Shank* v. *G. F. Ins. Co.*, 4 App. Div. 516; *Moore* v. *H. F. Ins. Co.*, 141 N. Y. 224; *Quinlan* v. *P. W. Ins. Co.*, 133 N. Y. 356; *O'Reilly* v. *Corp. London Assur.*, 101 N. Y. 575.)    The court erred in allowing evidence of the admissions and declarations of the agent after the fire and after the alleged executory contract was made. (Gillet on Ev. 135, § 90; Greenl. on Ev. [16th ed.] 589; *V. & M. R. R.* v. *O'Brien*, 119 U. S. 99; *Idaho Forwarding Co.* v. *F. F. Ins. Co.*, 17 L. R. A. 586; *Sherman* v. *D., L. & W. R. R. Co.*, 106 N. Y. 547; *McNeill* v. *M. S. Ry. Co.*, 20 Misc. Rep. 426.)    The agreement testified to by the plaintiff's husband was the agreement of Charles Horton, or of Horton Brothers, and not the agreement of the defendant. (*Sargent* v. *N. F. Ins. Co.*, 86 N. Y. 626.)

*A. C. Wade* for respondent.    The agreement of the agent to renew the policy by issuing a new one on the expiration of the old was a valid agreement and binding upon the defendant. (*F. B. Church* v. *B. F. Ins. Co.*, 19 N. Y. 305; *Ellis* v. *A. C. F. Ins. Co.*, 50 N. Y. 402; *Van Loan* v. *F. M. F. Ins. Co.*, 90 N. Y. 280; *Post* v. *A. Ins. Co.*, 43 Barb. 351; *Kelly* v. *C. Ins. Co.*, 10 Bosw. 82; *Van Schoick* v. *N. F. Ins. Co.*, 68 N. Y. 434; *Church* v. *L. F. F. Ins. Co.*, 66 N,

Y. 223; *Angell* v. *H. F. Ins. Co.*, 59 N. Y. 171; *Reynolds* v. *W. F. Ins. Co.*, 8 App. Div. 193; *Audubon* v. *E. Ins. Co.*, 27 N. Y. 216.) The term of credit given by the agent to the insured in no sense impairs the validity of the contract. (*F. B. Church* v. *B. F. Ins. Co.*, 19 N. Y. 305; *F. B. Church* v. *B. F. Ins. Co.*, 18 Barb. 69; *Goit* v. *N. P. Ins. Co.*, 25 Barb. 189; *C. M. Ins. Co.* v. *U. M. Ins. Co.*, 19 How. [U. S.] 318.)

BARTLETT, J. As the judgment for plaintiff was unanimously affirmed by the Appellate Division, the facts are conclusively settled in her favor.

The Hanover Fire Insurance Company in 1893 was represented at Jamestown, N. Y., by its agents, Horton Brothers, who issued a policy to the plaintiff, dated December 20th, 1893, insuring certain personal property for the term of one year. The property was destroyed by fire on the 29th day of December, 1894.

The plaintiff's contention is that the policy was duly renewed prior to its expiration, December 20th, 1894; the defendant insists the policy expired on the last-named date.

The jury have necessarily found that a verbal contract, renewing the policy for another year, was made between the plaintiff's husband, acting as her agent, and one of the firm of Horton Brothers about ten days before expiration; that plaintiff was to pay premium in not more than thirty days and call and get policy.

The learned counsel for the defendant raises his first question of law, based on this finding of fact, to the effect that the agents of the company had no authority to make a verbal contract to continue a risk beyond the expiration date.

The defendant read in evidence the certificate of appointment making Horton Brothers its agents at Jamestown, and among other powers therein conferred was " to countersign, issue and renew policies of insurance."

The oral contract is the ordinary and usual agreement which an insurance agent makes on the eve of a policy expiring that

he will renew it.    The question in this case is not whether the
agent can enter into a parol contract of insurance that will
bind the principal, but rather, having agreed orally to con-
tinue an existing contract of insurance and issue a renewal or
policy therefor, the defendant is bound thereby.

. This court considered the question in *Ellis* v. *Albany City
Fire Insurance Co.* (50 N. Y. 402) and held the parol contract
valid.    In a later case (*Angell* v. *Hartford Fire Ins. Co.*, 59
N. Y. 171) the authority cited was followed, and it was further
held that the payment of premium, at the time of the oral
agreement, is not necessary to make the contract binding on
the company; if a credit be given by the agent it is equally
obligatory.    (*Trustees, etc.*, v. *Brooklyn Fire Ins. Co.*, 19 N.
Y. 305; *Audubon* v. *Excelsior Ins. Co.*, 27 N. Y. 216.)

In *Ruggles* v. *American Central Ins. Co.* (114 N. Y.
415), this court, in the Second Division, upheld the oral agree-
ment from the date of the conversation.    (See, also, the recent
case of *Hicks* v. *British American Ins. Co.*, 162 N. Y. 284.)

The matter of parol agreement by a local insurance agent
was quite recently before this court in a case involving the
oral promise of the agent made with the transferee of the
property and policy to go where the latter was kept by a third
person and make the required indorsement.    The agent failed
to keep his promise, a fire occurred, and it was held that the
transferee could recover from the company the amount of the
insurance as damages for the breach of such oral agreement.
(*Manchester* v. *Guardian Assurance Co.*, 151 N. Y. 88.)
The line of cases cited was there approved.

In the case at bar it follows that the oral agreement of
defendant's agents to renew plaintiff's insurance was a contract
they were legally competent to make, and the recovery thereon
must be sustained.

The defendant further insists, however, that there was legal
error in allowing, over its objection and exception, certain
questions to be propounded to the agents, Horton Brothers,
on cross-examination, whereby it was sought to lay the founda-
tion for their collateral impeachment.

Charles L. Horton was asked if he knew Charles H. Wickes, a real estate man residing in Jamestown, and whether he had a talk with him about the fire a week or ten days after it occurred. The witness stated that he knew Wickes, but recalled no conversation. This question was then put to him : " Q. Did he ask you, referring to this fire, if they were settling with Squier's people for their loss, or that in substance, and did you reply that you had written the adjuster and you thought when he got here the loss would be settled and paid, or that in substance ? A. I did not."

Plaintiff placed Wickes on the stand, who stated that he knew Horton and had a talk with him about the fire. This question was put to him : " Q. And did you ask him if they, the insurance company, were settling with Squier's people for their loss, or that in substance, and did he reply that he had written the adjuster and he thought that when he got there the loss would be settled and paid, or that in substance ? A. He did."

Walter B. Horton, the other member of the firm of Horton Brothers, when under cross-examination, was asked this question : " Q. In that conversation did you say or did Mr. Rich say to you in the presence of Mr. Wells, ' It is a hard blow for Mr. Squier or Mrs. Squier,' and ask you if he had got to lose this amount, and did you reply, in substance, that you thought not, that you thought you could get it for him ? A. What you said I didn't say at all. The substance is different. I didn't say that in substance."

Wells was placed upon the stand, and, on being duly questioned, testified that Walter B. Horton stated to him substantially that which is embodied in the above question.

The defendant's counsel objected to the question asked Charles L. Horton, on the ground that it was incompetent, immaterial and " any declaration made by this witness that an adjuster would come or pay a loss if the company was not liable for a loss would not bind the company."

The same objection, in substance, was interposed to the question asked Walter B. Horton.

It is very clear, from the form of these objections, that the counsel for the defendant misapprehended the object of asking these questions. The oral contract had been proved by plaintiff's counsel when the case was with him and he now sought, not to adduce additional evidence as to the making of the contract, but to lay the foundation for proving that the agents had in conversations subsequent to the fire made statements as to facts involved within the issues wholly inconsistent with the position assumed by them in defending this action and as witnesses at the trial.

The rule is well settled that a witness may be asked on his cross-examination, with a view to his credibility, whether he has not made statements touching a material issue in the cause at variance with his testimony in chief, and if he denies having made such statements, the party against whom he is called may show, by other witnesses, that he did make them. (*Patchin* v. *Astor Mutual Ins. Co.*, 13 N. Y. 268; *Schell* v. *Plumb*, 55 N. Y. 592; *People* v. *Schuyler*, 106 N. Y. 298; 1 Greenleaf's Ev. [16th ed.] §§ 461f, 462 *et seq.*)

Applying this rule to the facts in the case at bar, it is clear that the questions asked Horton Brothers under cross-examination bore strongly upon their credibility by showing declarations made by them after the fire at variance with their evidence at the trial and their general position as agents of the defendant.

We have this situation: The plaintiff insisting the policy of insurance was seasonably renewed, and the defendant asserting, through its agents, that the risk on the property terminated by lapse of time nine days before the fire.

In other words, at the time the property was destroyed, the defendant company rested under no legal obligation to pay the loss, and the plaintiff might have, with equal propriety, sued any other insurance company in the state of New York.

This being so, there was but one position that Horton Brothers, the agents of the company, could consistently assume and maintain, to wit, the positive denial of liability. It was, however, established by disinterested witnesses at the

trial, after the foundation had been duly laid for the evidence and the attention of Horton Brothers sharply called to the precise point involved, that Charles L. Horton said shortly after the fire that he had written the adjuster and thought when he got there the loss would be adjusted and paid.

Walter B. Horton, under like circumstances, stated that he did not think plaintiff would lose the amount, and that he thought he could get it for her.

These statements were inconsistent with the position of no liability on the part of the defendant, and if the jury believed the disinterested witnesses who swore to them, they were justified, in the exercise of their honest judgment, in rejecting the entire evidence of Horton Brothers.

The judgment appealed from should be affirmed, with costs.

PARKER, Ch. J., MARTIN, VANN, CULLEN and WERNER, JJ., concur; GRAY, J., not voting.

Judgment affirmed.