We find nothing in the case of Thomas v. State, 230 S. W. 159, which supports the contention of appellant.

[5-7] There was no error in failing to charge on accomplice testimony in the instant case. The record shows appellant in possession of other liquor than that sold. The law of accomplice testimony in a case wherein the charge is possession of liquor, some portion of which is sold by the accused, could only be held to apply to that part of the liquor sold to the witness, and would not apply to the testimony of said witness as to other liquor then in his possession. We might illustrate this by referring to the case of one who assists in the theft of an animal, and, when said animal is carried to the premises of one of said thieves, or found thereon, a number of other stolen animals are found in possession of said thief, with which, it might be made clear, the accomplice in the theft of the one head of cattle had no connection. He would not be an accomplice as to the theft of the other animals found in possession of said thief, and with the taking of which he had no connection. When a witness testifies in a prosecution for the sale of liquor, or the possession only of that liquor bought by such purchaser, we believe that the witness is an accomplice, and the law of accomplice testimony is applicable. We cannot apply to liquor prosecutions different rules from those which apply to other criminal cases, unless directed so to do by statute. It is a well-settled rule that one who connects himself with a criminal enterprise at any stage becomes an accomplice as to what has gone before. It is equally well settled that one who receives stolen property is an accomplice, and, if he testifies for the state on the trial of the party from whom he received said stolen property, he is held to be an accomplice, and the law of accomplice testimony should be given in charge, even though it should appear that the theft of the article was entirely completed before his connection therewith. In the instant case appellant was shown without contradiction to have been in possession of other liquor besides that bought by the witness who testi-fied against him on the instant charge of possessing, and we therefore do not think the case falls within any of the rules of accomplice testimony.

As to the other contentions relative to the apparent conflict between the state and national liquor laws, they have all been considered and decided adversely to appellant in the decisions of this court.

Finding no error in the original opinion, the motion for rehearing is overruled.

---

## AUSTIN FIRE INS. CO. v. ADAMS-CHILDERS CO.   (No. 6232.)

(Court of Civil Appeals of Texas. Austin. March 22, 1921. Rehearing Denied June 8, 1921.)

**1. Insurance ⨎145(1)—Fire insurance company held liable for loss after having neglected to renew policy as agreed.**

Where an insurance company, through its agent, agreed with insured to renew a policy on expiration thereof, but neglected to do so, and a loss occurred, *held*, that the insurance company was liable for the amount of the loss as though the policy had been issued.

**2. Insurance ⨎668(4)—Whether excessive concurrent insurance was carried held for court.**

In an action against a fire insurance company to recover for a loss sustained, where the defense was interposed that insured carried more concurrent insurance than was allowed, and the only question was whether certain insurance policies showed concurrent insurance in excess of the stipulated amount, it was not error to refuse to submit the issue to the jury; the question being one mainly of mathematics, which could be ascertained as readily by the court as by the jury.

**3. Insurance ⨎646(1)—Burden on insurer to show that compliance with verbal agreement to renew would violate law.**

In an action against a fire insurance company for loss sustained, where the company had neglected to renew policies under an agreement with its agent, the burden was on defendant to show that it was prohibited by law from complying with its verbal contract or agreement on the ground that the fire insurance commission had ordered all policy forms changed, under Rev. St. arts. 4891, 4895.

**4. Insurance ⨎665(1)—Evidence insufficient to show that fire insurance commission had ordered change in form of policies.**

In an action against a fire insurance company for loss sustained after the insurer had neglected to renew policies under an oral agreement, evidence *held* insufficient to prove that the fire insurance commission had made an order changing the form of policies, so as to make compliance with the verbal agreement unlawful.

---

⨎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Error from District Court, Coleman County; J. O. Woodward, Judge.

Action by the Adams-Childers Company against the Austin Fire Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Thompson, Knight, Baker & Harris and Will C. Thompson, all of Dallas, for plaintiff in error.

J. K. Baker and Snodgrass, Dibrell & Snodgrass, all of Coleman, for defendant in error.

KEY, C. J. The Adams-Childers Company, a private corporation, brought this suit against the Austin Fire Insurance Company, and the latter has brought the case to this court by writ of error.

The plaintiffs were engaged in a large mercantile business in the town of Santa Anna, and on October 12, 1917, their property was destroyed by fire. The case was submitted upon special issues, and the jury found in substance:

(1) That L. V. Stockard was an agent having authority to represent the Austin Fire Iusurance Company, and that as such agent he made an agreement with the firm of Adams & Childers that the policies of insurance then held by that firm in the Austin Fire Insurance Company would be renewed, when they expired, for a period of one year, and the policies would not be permitted to expire, but would be kept in force by renewal from the date of the expiration of the policies, and, unless advised to the contrary, a renewal of the policies would be issued for another term of one year, and be delivered to the bookkeeper of the firm, upon agreement of the firm to pay when delivered whatever amount of annual premium was due on such policies; such policies to be for the same amount, and for the same terms as the policies expiring, and to extend from year to year as to all policies in the defendant company, if no notice to the contrary was given.

(2) That L. V. Stockard, as agent for the Austin Fire Insurance Company, on or about February 16, 1917, made an agreement with G. Adams, acting for the Adams-Childers Company, a corporation, and 'the plaintiff in this suit, that the insurance, which had been transferred from the partnership of Adams & Childers to the plaintiff, would be continued with the defendant insurance company, in the same way and upon the same terms as had been done with the partnership of Adams & Childers.

[1] The testimony supports the foregoing findings of the jury. The undisputed proof shows that the Austin Fire Insurance Company complied with that contract, and issued a policy, which expired September 27, 1917, but that it breached the contract by failing to issue a renewal policy for $4,000, the amount of the policy which had expired, and therefore the plaintiff had no policy in the Austin

Fire Insurance Company at the time its stock of merchandise was destroyed by fire, October 12, 1917.

The plaintiff's suit was based upon the doctrine announced and applied in Cohen v. Continental Insurance Co., 67 Tex. 325, 3 S. W. 296, 60 Am. Rep. 24, and Orient Ins. Co. v. Wingfield, 49 Tex. Civ. App. 202, 108 S. W. 788, decided by this court. In the former case, the Supreme Court said:

"There can be no doubt that an insurance company through its authorized agent, may contract by parol for the renewal of a policy, although it may be stipulated on the face of the instrument itself that this shall not be done. There is no peculiar sanctity attached to such provision in contracts of this character which makes them an exception to the general rule that parties to an agreement may, by mutual conctrrence, change its terms at any time after its execution so as to meet their pleasure or interest. A contract of insurance may be by parol, and its terms may be changed by parol, by mutual assent. It has accordingly been held, in numerous decisions, that though a policy be forfeited by the failure to pay the premiums according to its conditions, yet an agent, duly authorized, may waive the forfeiture and thereby reinstate the obligation. The cases go even further, and decide that the authority of the agent may be implied from a previous waiver of a former forfeiture of the same policy, or from a general custom of such agent to exercise such power over the contracts of the company."

In the Wingfield Case this court said:

"In this connection we will dispose of the contention of appellant that the evidence does not show a definite contract of renewal in this particular company, that Ions was the agent of many companies, and that, in order to determine a liability of the appellant's company, the evidence creating the contract to renew must show that the renewal was intended to cover a policy in this company. In reply to this it is clear that the evidence justifies the conclusion that the contract was not merely to renew an insurance, but to renew the old existing policy in appellant's company. When the contract is to renew a policy, and there is no evidence introducing new or additional terms, the presumption is that the renewal is for the same time, terms, amount, premium, and to cover the same property as the old policy. Western Union Ass'n v. McAlpin, 23 Ind. App. 220, 55 N. E. 121, 122, 77 Am. St. Rep. 423; Commercial Ins. Co. v. Morris, 105 Ala. 498, 18 South. 35; Wiebeler v. Milwaukee Ins. Co., 30 Minn. 464, 16 N. W. 363. The very request to renew a policy implies that the new policy shall be exactly like and similar to the old policy. As to the questions of premium, contract of renewal, and measure of damages, we cite the following cases: Baldwin v. Phœnix Ins. Co., 107 Ky. 356, 54 S. W. 13, 92 Am. St. Rep. 362; German Ins. Co. v. Goodfriend (Ky.) 97 S. W. 1098; King v. Phœnix Ins. Co., 195 Mo. 290, 92 S. W. 892, 113 Am. St. Rep. 678; Home Ins. Co. v. Adler, 71 Ala. 516; Commercial Ins. Co. v. Morris, supra; Western Assurance Co. v. McAlpin, supra; Squier v. Hanover Ins.

Co., 162 N. Y. 552, 57 N. E. 93, 76 Am. St. Rep. 349; King v. Heckla Ins. Co., 58 Wis. 508, 17 N. W. 297. Other cases to like effect could be cited. We will not undertake to quote from the opinions delivered in the cases mentioned. On evidence establishing contracts of renewal of less force than the facts stated in this record, these cases hold: (1) That the action may be maintained, not upon a policy, but upon the contract to renew the policy, and that, in the absence of evidence to the contrary, the implication arises that the renewal is upon the same terms and conditions as stated in the old policy, and that the amount of insurance to be paid in the event of loss shall be the sum stated in the old policy; this being the measure of damages when there is a total loss and no change in the property or its value. (2) It is further held that, in the absence of agreement to the contrary, the presumption will be that when a contract to renew is made it is contemplated that the same terms, time, and premium as formerly existed should apply to the contract of renewal. (3) It is also held that the payment of premium is not essential to the validity of such a contract; that in ascertaining whether the premium has been paid or waived the habit and custom and course of dealing between the assured and the agent of the company may be looked to. The principles of law announced in these cases are applicable to the facts of this case."

Several questions presented in the brief of the insurance company are decided adversely to it in the cases just referred to, and they will not be further adverted to in this opinion. However, several other questions are presented, some of which we deem it necessary to briefly discuss.

If the defendant had issued to the plaintiff a policy similar to the one which expired September 27, 1917, it would have contained a stipulation to the effect that the insurance company should not be liable for an amount greater than three-fourths of the actual cash value of the property, and the defendant pleaded that provision of the contract. During the progress of the trial, the defendant's attorney admitted, in open court, that the plaintiff had sustained loss by the fire to the extent alleged in its pleadings, and the plaintiff alleged in its petition that the property destroyed by fire was far in excess of the sum of $4,000, the amount sued for, and that the amount of loss was in excess of any insurance held by plaintiff on the property, after allowing credit for all insurance held by the defendant thereon. This being the case, we hold that the assignment of error presenting that question should be overruled; and for the same reason we overrule another assignment complaining of the action of the trial court in refusing to give a requested instruction, by which the jury would have been required to find what was the largest amount of insurance had at one time during the year 1917, by the plaintiff on the stock of merchandise in the store which was burned in the fire referred to.

[2] Under another assignment, it is contended that the requested charge referred to should have been given, because the defendant pleaded the stipulation in the contract limiting the concurrent insurance to $30,000. It is not stated in that assignment, the proposition, nor statement thereunder, that the evidence showed a breach of the contract in reference to concurrent insurance; the contention being that the testimony raised that issue. The statement in the brief of the plaintiff in error merely refers to former statements for the testimony bearing upon that question. The only pertinent testimony was certain insurance policies, and whether or not they showed concurrent insurance in excess of $30,000 was virtually a question of mathematics, and not an issue which the court could be required to submit to a jury. Juries are not organized for the purpose of adding figures and ascertaining their total sum, when that can be done as readily by the court. In reply to that assignment, counsel for the defendant in error assert that the testimony does not show an excess of concurrent insurance, and give a list of what purports to have been the other policies upon the property, which list does not show such excess.

It is also contended on behalf of the insurance company that, if the proof established the verbal contract relied on by the plaintiff, it was impossible for the insurance company to comply with that contract, without violating the law and rendering itself liable for penalties prescribed by the Legislature. The contract referred to was made February 16, 1917, and it is contended that on March 30, 1917, the state fire insurance commission ordered all policy forms changed, and that under the order referred to the insurance company was not permitted to write policies containing some of the material stipulations in the policies it had agreed to renew.

Article 4891 of the Revised Statutes, after conferring authority upon the insurance commission to make, promulgate, and establish uniform policies of insurance, provides that—

"The commission shall also have authority, in its discretion to change, alter or amend such form or forms of policy, * * * and such clauses or indorsement used in connection therewith, upon giving notice and proceeding in accordance with section 21 of this act."

Section 21, which is article 4895, provides that the state fire insurance commission shall give the public and all insurance companies, to be affected by its order and decision, reasonable notice thereof, not exceeding 30 days, and an opportunity to appear and be heard thereon; it is provided that notice to the public shall be published in one or more daily papers in the state. Article 4891 requires:

"That after such uniform policies shall have been established and promulgated and furnished

the respective companies doing business in this state, such companies shall, within sixty days after the receipt of such forms of policies adopt and use said form or forms and no other."

[3] It will be observed that, by force of the statute just quoted, the alleged action of the state fire insurance commission in prescribing a different form of policies did not become effective as against the Austin Fire Insurance Company, or any other insurance company, until such company had been furnished with the form of policy referred to, and each company was allowed 60 days after being so furnished to adopt such form of policy. No evidence was submitted to show that, on September 27, 1917, the date when the policy should have been renewed, the Austin Fire Insurance Company had been furnished with the form prescribed. We think the burden rested upon the insurance company to furnish such proof, in order to show that it was prohibited by law from complying with the verbal contract it had previously made, and, such proof not having been supplied, that defense failed.

It is also contended, on behalf of the plaintiff in the court below, that the evidence failed to show that the state fire insurance commission had made the order alleged by the defendant. The latter read in evidence a certificate, purporting to be signed by George Waverly Briggs, chairman, T. M. Scott, secretary, and S. W. English, state fire marshal. It did not purport to be under seal, and had no seal attached, but it certified that the state fire commission had prescribed a different form of policy, which, if controlling, would have prohibited the Austin Fire Insurance Company from rewriting a policy containing all the material terms of the one which the plaintiff alleges the insurance company agreed to renew.

It is contended by counsel for Adams-Childers Company that, although the record does not show that any objection was made to the introduction of that document as evidence, there was no statute which permitted its use as such, and therefore the statements made therein were hearsay and proved nothing. In support of that contention, they cite Byers v. Wallace, 87 Tex. 512, 28 S. W. 1056, 29 S. W. 760, and Henry v. Phillips, 105 Tex. 459, 151 S. W. 533. In the former case the Supreme Court said:

"We find no law which authorized the adjutant general to give such a certificate as that offered in evidence. It was hearsay, and properly excluded."

In the latter case the court used the following language:

"While the admission of this testimony was not objected to by counsel for defendants, that fact would be important only in the event its admission was afterwards complained of as violative of a right reserved to defendants. Such incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record without objection. When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force. The admission of such testimony is no talisman to give effect to that which is irrelevant and incompetent to sustain or deny a material issue in a case."

[4] We have not been cited to, nor have we found, any statutory provision authorizing the state fire insurance commission to make certificates which may be used in evidence, and we seriously doubt if the certificate in question was authorized by article 3707, which provides for "certified copies under the hands and official seals of the heads of departments." Hence we are strongly inclined to the view that the insurance company failed to prove that the fire insurance commission had made the order changing the form of policies alleged by the insurance company.

Counsel for Adams-Childers Company also make a vigorous assault upon the constitutionality of article 4891, which attempts to confer upon the insurance commission the power to establish and change the forms of insurance policies, and they cite authorities in other states which sustain that contention. However, as the judgment in this case can be affirmed without deciding that question, we prefer to pursue that course, and not pass upon the constitutionality of the statute until it becomes absolutely necessary to do so, as in the meantime that question may be settled by the Supreme Court.

The other questions presented in behalf of the insurance company are decided against it.

The defendant in error has presented a cross-assignment; but, as the judgment in its favor will be affirmed, we deem it unnecessary to consider that assignment.

No reversible error has been shown, and the judgment is affirmed.

Affirmed.