**AUSTIN FIRE INS. CO. v. ADAMS-CHILDERS CO. (No. 337-3705.)\***

(Commission of Appeals of Texas, Section B. Jan. 3, 1923.)

**1. Appeal and error ⬉1094(2) — Approved findings conclusive, unless unsupported by any evidence.**

Where jury findings have been approved by the trial court, and acquiesced in by the Court of Civil Appeals, and it cannot be said that there is no evidence to support them, they are binding upon the Supreme Court.

**2. Evidence ⬉588—Jury may reconcile inconsistencies.**

The jury has a right to believe part of a witness' testimony and absolutely discard other portions of it, it being peculiarly the jury's province to reconcile inconsistencies in the testimony of any witness.

**3. Insurance ⬉145(2)—Insurer's approval of agent's contract to keep insurance renewed gives agent actual authority to so contract.**

If insurance agent agreed to look after renewals for insured and either issue renewal policies or advise insured beforehand of his inability so to do, and reported this contract to the home office of insurer, and for several years thereafter insurer acquiesced in said contract by the agent, it was bound thereby.

**4. Insurance ⬉336(1) — Excessive insurance avoids policy.**

Excessive or unpermitted concurrent insurance, violative of the provisions of a fire insurance policy, renders the latter void.

**5. Insurance ⬉646(1)—Burden of showing effective change in policy form as excuse for failing to renew policy rested upon insurer.**

Where insurer contracted with insured to renew fire policy or advise of its inability to do so, and insurer sought to excuse breach of such contract by the fact that the State Insurance Commission promulgated by its order a new form for standard fire insurance policy, but it appeared that the law required certain things to be done before such order would be applicable to any given insurance company, the burden rested upon insurer to show that, as respects it, such things had been done so that the order became effective as to it, and thereby rendered its compliance with the contract to · renew legally impossible.

**6. Insurance ⬉145(1)—Failure to fulfill contract to renew or advise insured not excused by change in standard form.**

Where insurer contracted to either renew insured's policy or advise insured of its inability to do so, a change by the State Insurance Commission, of the standard policy form, did not excuse failure to comply with the contract, since, even if the change rendered it impossible to renew the policy in the same form, insurer still owed insured the duty of advising insured that insurer could not renew because of such change.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the Adams-Childers Company against the Austin Fire Insurance Company. Judgment for plaintiff was affirmed by the Court of Civil Appeals (232 S. W. 339), and defendant brings error. Affirmed.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiff in error.

J. K. Baker and Snodgrass & Dibrell, all of Coleman, for defendant in error.

POWELL, J. As early as 1914 the Austin Fire Insurance Company was insuring the firm of Adams & Childers of Santa Anna, Tex., which firm was engaged in a large mercantile business, against loss to their stock of goods by fire. In 1915, before the 1914 policy issued by said company in favor of said mercantile firm was to expire, one Stockard, as agent of the insurance company, solicited additional insurance business from said firm. At that time it was agreed by and between the said Stockard and said mercantile firm that the former, as agent, would renew and keep alive, from year to year, the insurance policies written by him in the various companies he represented, including this additional business; that he (the said agent) would renew these policies, or advise said firm before expiration that he could not do so, unless the firm itself advised him in the meantime not to renew them.

In compliance with aforesaid agreement, the Austin Fire Insurance Company did renew its policies in favor of Adams & Child-

ers in September, 1915 and 1916. Stockard relieved the insured of the burden of keeping up with the expiration of their insurance policies in return for the increased insur-.ance business given him and the companies he represented.

Early in 1917, Adams & Childers incorporated their partnership business under the name of the Adams-Childers Company. After doing so, and about February 16, 1917, the new corporation advised Stockard of its changed status, and the insurance policies in favor of the partnership firm 'were all properly indorsed accordingly. The mercantile corporation at the same time renewed its contract and understanding with Stockard, as agent, and it was agreed by the latter that he would look after the renewal of the policies of the insured corporation as he had done in the past for the insured partnership firm.

However, when the $4,000 policy issued by the Austin Fire Insurance Company on the stock of goods in the main store of the company expired on September 27, 1917, Stockard did not' renew the policy, as per his agreement aforesaid. Consequently, defendant in error had no policy with plaintiff in error at the time former's stock of merchandise was destroyed by fire on October 12, 1917.

Defendant in error, after the fire, presented a claim to the insurance company for the $4,000 due under a policy it alleged the company had agreed to renew. The insurer denied liability, whereupon the mercantile corporation filed its suit in the district court of Coleman county, Tex., to enforce its claim and recover under said policy, just as if it had actually been renewed, issued, and· delivered.

The case was tried in the district court before a jury. The special issues submitted to the jury and the answers of the jury thereto are as follows:

"Question No. 1. Did L. V. Stockard as the agent of the Austin Fire Insurance Company, for said company, make an agreement with G. E. Adams, for the Adams-Childers partnership, that the policies of insurance, if any, then held by said firm in said company, would be renewed when they expired, for a period of one year, and that policies would not be permitted to expire but would be kept in force by renewing for another year from the date of the expiration of the policy, and unless so advised to the contrary, a renewal of the policy would be' issued for another term of one year and be delivered to the bookkeeper of the firm upon agreement of the firm to pay when delivered whatever amount of annual premium was due on each policy, such policies to be for the same amount as the policies expiring and upon the same terms as the one expiring, and was this to be done from year to year as to all policies expiring in defendant company, if no notice was given to the contrary? Answer this question Yes or No. Yes.

"Question No. 2. Did L. V. Stockard as agent for the Austin Fire Insurance Company, for said insurance company, on or about February 16, 1917, make an agreement with G. E. Adams, acting for Adams-Childers Company, if any, that the insurance transferred to the company would be continued with said company in the same way and upon the same terms as had been done with the partnership of Adams & Childers? Answer this question Yes or No. Yes.

"Question No. 3. Did L. V. Stockard as agent for the Austin Fire Insurance Company for said company, on or about February 16, 1917, make an agreement with S. W. Childers, acting for the Adams-Childers Company, if any, that the insurance transferred to the company would be continued with said company or corporation in the same way and upon the same terms as it .had been with the partnership of Adams & Childers? Answer this question Yes or No. Yes.

"Question No. 4. Did L. V. Stockard have authority from defendant Austin Fire Insurance Company, to make such agreement, if any you find were made? Answer this question Yes or No. Yes.

"Question No. 5. Did L. V. Stockard have apparent authority as agent for the Austin Fire Insurance Company, to make such agreement, if any you find were made? Answer this question, Yes or No. Yes.

"Question No. 6. Did G. E. Adams inform L. V. Stockard not to renew any more insurance policies as they expired, for the Adams-Childers Company, and that he was going to place the insurance with some reciprocal underwriters or mutual companies? Answer this question Yes or No. No.

"Question No. 7. Did L. V. Stockard fail to renew the policy in the Austin Fire Insurance Company, being policy No. 136310, expiring September 27, 1917, in the sum of $4,000, because G. E. Adams for the plaintiff told him (Stockard) that he should not renew the policies carried by said Stockard which expired in August and September, 1917, as Adams intended to take out the insurance in reciprocal underwriters or mutual companies? Answer this question, Yes or No. No."

Upon the aforesaid answers of the jury, the trial court entered judgment in favor of the Adams-Childers Company, and against the Austin Fire Insurance Company, for $4,000 and interest. The insurance company then brought the case by writ of error to the Court of Civil Appeals at Austin. That court, in ˉan opinion by Chief Justice Key, affirmed the judgment of the district court. See 232 S. W. 339. The insurance company's ·application for writ of error was granted, and the cause is now before us for examination and recommendation.

In the Supreme Court, the plaintiff in error abandons many of the contentions urged by it in the district court and Court of Civil Appeals and presents here 'but one assignment of error. ·That assignment is to the effect that the trial court erred in refusing to peremptorily instruct the jury to return a verdict. in its favor. This one assignment of error is divided into several propositions,

which may be grouped into three principal contentions. We shall now discuss these three in turn.

In the first place, plaintiff in error says that Stockard was not authorized by it, as its agent, to look after the expirations of defendant in error's policies in its company; that, if he made any such agreement and assumed any such burden, it was on his own account personally and not binding on his principal; that if any one was liable to defendant in error in damages for dereliction of duty or breach of contract, it was Stockard, individually and alone. The contention of the insurance company is that these theories just presented are established by the undisputed testimony. Certain terms of the contract made by agent Stockard with the insured are undisputed. For instance, he himself sets out such provisions, as follows:

"In that conversation that I had with them, I did tell them ·that I would, on the policies then existing or that might thereafter be issued by me, renew them from time to time, and keep them renewed from time to time, unless they directed me not to do so. I told them that I would keep the policies renewed and not let them expire on him without giving him notice."

From this quotation it is clear that Stockard agreed to keep these policies renewed or advise the insured of his inability to do so, unless the insured company, itself, should advise him in advance not to issue the policies. In other words, Stockard relieved the insured of the necessity of keeping up with its policies and the dates of their expirations. It was further undisputed that Stockard was to deliver the policies in due course, after issuance, to the bookkeeper of insured, who was authorized to pay the premiums demanded by the insurance company from year to year. Stockard did not deny his obligation to look after these renewals. He attempted to excuse himself for failing to renew the policy in suit by testifying that he did not renew it because the insured directed him not to do so. The jury, upon conflicting evidence in this connection, found against this contention of Stockard. The jury also found, likewise upon conflicting testimony, that Stockard, as agent of said company, agreed to renew this very policy in the Austin Fire Insurance Company, and not merely in any company represented by Stockard and to be chosen by him. The jury further decided that· Stockard had actual authority, as well as apparent authority, to make this contract with defendant· in ·error to renew the policy in suit.

[1] These findings of the jury were approved by the trial court in awarding judgment against the insurance company. They were acquiesced in by the Court of Civil Appeals. We have carefully read the entire statement of facts, and we cannot say that there is no evidence to support such findings of fact. Therefore said findings are binding upon the Supreme Court. See Electric Express & Baggage Co. v. Ablon, 110 Tex. 235, 218 S. W. 1030; Sheehan v. Levy (Tex. Com. App.) 238 S. W. 900.

The Court of Civil Appeals, in the instant case, · held that an agent, such as Stockard was, was acting within the apparent scope of his authority in making agreements to renew policies in a given company he represents. Judge Key relies upon a former decision of his own court in case of Insurance Co. v. Wingfield, 49 Tex. Civ. App. 202, 108 ·S. W. 788, as well as the Supreme Court case of Cohen v. Ins. Co., 67 Tex. 325, 3 S. W. 296, 60 Am. Rep. 24, as supporting his opinion in the case at bar. In the Wingfield Case, the agent who represented the company was a local agent and had the same authority to represent his company as Stockard had in the instant case. He had the blank policies in his possession and was authorized to issue and deliver them by merely countersigning his name thereto. As so delivered, they were binding until and unless later canceled by the insurer. The practical effect of the holding of the Court of Civil Appeals in the Wingfield Case is that an agent such as Stockard was is a general agent for the insurance company in the issuance and delivery of policies and is authorized to contract to do the things which are ·ordinarily incident to procuring and writing of fire insurance policies.

It is significant that a writ of error was denied by the Supreme Court .in the Wingfield Case, although recovery against the insurance company had been awarded by the lower courts, and even though there had been no finding of fact that the agreement to re-. new the policy was an agreement to renew it in a particular company among those represented by the agent. In the Wingfield Case, the court held that it would be presumed that an agreement to renew a policy was an agreement to renew it in the same company.

In view of the refusal of a writ of error by the Supreme Court in the aforesaid case, we are much impressed that its holdings are sound. Furthermore, it is supported by many authorities of other states. These authorities are collated by the Supreme Court of North Dakota in the very similar fact case of McCabe v. Ætna Ins. Co., 9 N. D. 19, 81 N. W. 426, 47 L. R. A. 641.

But counsel for the insurance company contend that by holding it liable in the case at bar, we would be overruling the opinion of the Court of Civil Appeals at Texarkana in the case of Insurance Co. v. Robinson, 192 S. W. 793, as well as that of the Court of Civil Appeals at San Antonio in the case of Insurance Co. v. Richey, 206 S. W. 383, which latter case followed the Texarkana court in its case aforesaid.

Neither of the two cases last mentioned reached the Supreme Court on application for writ of error. Therefore, even if they are in conflict with the opinion of the Court of Civil Appeals at Austin in the Wingfield Case, supra, we would be inclined to follow the latter, in which a writ of error was refused.

[2] But it is not necessary for us to attempt to settle or reconcile any such alleged conflict in these authorities. The findings of the jury in the instant case are such as to render the insurer liable under all the authorities. As already stated, the jury found that a renewal of this policy in this very company was contracted for. Not only so, but the jury also found that Stockard was actually, as well as apparently, authorized by the insurer to make this agreement with the insured. While the evidence upon these points is highly conflicting, there is evidence authorizing this finding by the jury, because a portion of Stockard's own testimony would justify the jury in finding that he reported to his principal (plaintiff in error) this contract to look after and issue these renewals. The jury had a right to believe part of Stockard's evidence and absolutely discard other portions of it. It is peculiarly the province of the jury to reconcile inconsistencies in the testimony of any witness.

[3] Now, if Stockard agreed to look after these renewals and either issue such policies or advise insured beforehand of his inability so to do, and if he reported this contract to the home office of plaintiff in error, and for several years thereafter the company acquiesced in said contract by its agent, we think it is clearly bound thereby.

The daily reports by the agents of insurance companies are largely for the purpose of keeping the principal advised and to give the company an opportunity to exercise its option to cancel policies issued and delivered to the insured or disavow contracts made in connection therewith. The company had a right to permit its agent to assume the burden of keeping the policy in force, and looking after its renewal for the insured, and relieving it of that duty. Stockard did it because it increased his business, and an insurance company itself might reasonably decide that its own portion of the agent's business would be materially increased by getting started with the insured by reason of such a contract extending certain courtesies to the latter. Such a contract violates no Texas statute, nor is it subversive of sound public policy. In fact, there is much evidence that it is customary for such agents to look after renewals of policies listed with their agencies. Competition in this line is keen, and the volume of such business is likely to follow those who do the most by way of accommodating the insured.

As already indicated, we have been cited to no case which holds that the company itself would not be bound under a renewal contract of the kind we have here. We have an executed agreement, based upon valuable consideration, to write this very policy from year to year, unless certain things should happen, which things did not happen. In view of the provisions of the standard fire insurance policies in this state, we do not think a more definite or binding present contract could have been made by the parties than was made in the case at bar. In other words, if there had been an absolute contract for the issuance and acceptance of the renewal policies from year to year, such a contract would still have been subject to termination at any time at the option of either of the interested parties. Under the very terms of the policy itself, either party could have canceled the same at any time before it expired on September 27, 1917, or after the renewal policy had been issued and delivered, if it had been so issued and delivered. Consequently, in contracting for the renewal, the parties only recognized their mutual rights reserved in the insurance contract itself, in any event, to terminate it at pleasure. It seems clear to us, therefore, that this was, in fact, a definite and executed insurance contract. Furthermore, there is evidence that the company itself had actually authorized the contract that was actually made by its said agent.

Even the cases of Insurance Co. v. Robinson, and Insurance Co. v. Richey, supra, relied upon by the insurance company, clearly recognize the binding effect upon the insurance company of a contract like the one we have here, where the company itself, as well as its local agent, had notice thereof. For instance, in the former case, Judge Levy says:

"It is therefore concluded that the agreement in the instant case is lacking in the essentials of a completed contract to renew the policy at its expiration, and that there is no proof that the agent had authority to make the agreement in the case."

This same judge, in the same case, also holds:

"It is not doubted that an insurance company, through its authorized agent, may contract by parol for the renewal of a policy. Cohen v. Ins. Co., 67 Tex. 325, 3 S. W. 296, 60 Am. Rep. 24. And contracts to insure in the future are held valid, and specific performance thereof may be compelled even after a loss which would be covered by the policy if issued."

In the latter case of Insurance Co. v. Richey, Chief Justice Fly says:

"There is nothing to indicate that it was within the scope of his agency for appellant to attend to the insurance business of policy holders in the company, after the life of a policy had ended. It may not have been agreeable to

appellant to reinsure appellee's property, and there is no proof that appellant had any intimation of the agreement made by Barker to serve appellee, and certainly it could not be lawfully held liable for the breach of an unauthorized promise made by its agent."

The Supreme Court of North Dakota, in the case of McCabe v. Ins. Co., 9 N. D. 19, 81 N. W. 426, 47 L. R. A. 641, says:

"That an insurance company can, by a preliminary parol contract, bind itself to issue or to renew a policy in the future, seems too well settled to admit of doubt. In addition to the foregoing, the following are a few of the many authorities sustaining this doctrine: Stickley v. Mobile Ins. Co., 37 S. C. 56, 16 S. E. 280, 838; Baubie v. Ætna Ins. Co., 2 Dill. 156, Fed. Cas. No. 1,111; Cohen v. Continental F. Ins. Co., 67 Tex. 325, 60 Am. Rep. 24, 3 S. W. 296; Taylor v. Germania Ins. Co., 2 Dill. 282, Fed. Cas. No. 13,793; King v. Cox, 63 Ark. 204, 37 S. W. 877; Neward Mach. Co. v. Kenton Ins. Co., 50 Ohio St. 549, 22 L. R. A. 768, 35 N. E. 1060; Croft v. Hanover F. Ins. Co., 40 W. Va. 508, 21 S. E. 854; Hardwick v. State Ins. Co., 20 Or. 547, 26 Pac. 840; More v. New York Bowery F. Ins. Co., 130 N. Y. 537, 29 N. E. 757."

It will be observed that the judge who wrote the case last quoted from cites the Texas case of Cohen v. Ins. Co., 67 Tex. 325, 3 S. W. 296, 60 Am. Rep. 24. In the latter case Justice Gaines says:

"There can be no doubt that an insurance company, through its authorized agent, may contract by parol for the renewal of a policy, although it may be stipulated on the face of the instrument itself that this shall not be done. There is no peculiar sanctity attached to such provision in contracts of this character which makes them an exception to the general rule that parties to an agreement may, by mutual concurrence, change its terms at any time after its execution so as to meet their pleasure or interest. A contract of insurance may be by parol, and its terms may be changed by parol, by mutual assent. It has accordingly been held, in numerous decisions, that though a policy be forfeited by the failure to pay the premiums according to its conditions, yet an agent, duly authorized, may waive the forfeiture, and thereby reinstate the obligation. The cases go even further, and decide that the authority of the agent may be implied from a previous waiver of a former forfeiture of the same policy, or from a general custom of such agent to exercise such power over the contracts of the company. Insurance Company v. Norton, 96 Otto. 234; Chicago Life Ins. Co. v. Warner, 80 Ill. 410; Holmes v. Philadelphia Life Ins. Co., 61 Penn. State, 107; Bowman v. Ins. Co., 59 New York, 521; Westchester Fire Ins. Co. v. Earle, 33 Mich. 143; The Trustees, etc., v. Brooklyn Fire Ins. Co., 19 New York, 305."

Therefore, regardless of whether or not the local agent who issued these policies may by his own acts bind the insurance company itself, it is unquestionably true that

the company itself and for itself can make such a contract. The jury in this case has found that it actually, and not merely apparently, authorized Stockard to make this contract. We think it binding upon the company, under those circumstances, under all the authorities. Therefore the company was not entitled to a peremptory instruction upon the ground that the undisputed evidence showed that the contract to renew was not binding upon the company itself.

We will say, before passing on to the next question presented in the application, that the contract between the insured and agent Stockard was entirely mutual and reciprocal and to the advantage of each of the contracting parties. Fire insurance policies are subject to cancellation at any time, even after they are issued, at the option of either party at interest. The contract to renew merely carried this same right of either party to countermand the order for insurance. But, it did make it obligatory upon the agent to keep up with the expirations and either renew the policies as they expired or tell the insured in advance that they could not be renewed. There is a natural tendency on the part of people, generally, to continue to do business with the same people. Where a start is made, and where the business concern is accommodating, trade rarely changes. Therefore, an insurance company might well conclude that it would be to its decided advantage to gather new business by permitting its agents to relieve the insured of looking after their expirations. The contract is, in no sense, unreasonable and is clearly based upon a good consideration. In fact, it is not contended that it is without consideration.

[4] In the second place, the plaintiff in error contends that it was entitled to a peremptory instruction because the undisputed evidence shows the insured was carrying excessive insurance in violation of certain provisions contained in the policy, even if it should be held that the policy itself was binding upon the company. It is well settled that excessive or unpermitted concurrent insurance, violative of the provisions of a fire insurance policy, render the latter void. Our section of the Commission of Appeals so held, and collated the authorities in support thereof, in the case of Boatner v. Providence-Washington Ins. Co., 241 S. W. 136.

We think Judge Key recognized the force of the authorities, some of which formed the basis of our opinion in the Boatner Case. But he held that there was no excessive insurance in the case at bar. In making this holding, the judge said:

"In reply to that assignment, counsel for the defendant in error assert that the testimony does not show an excess of concurrent insurance, and give a list of what purports to have been the other policies upon the property, which list does not show such excess."

The language just quoted possibly indicates that the court made its finding upon a statement of counsel for the insured. We think the court merely overlooked saying that counsel's statement was accepted because substantiated by the record itself. Of course, the record, and not the statement of any counsel, is to be looked to by the courts as the basis of findings of fact. In the Court of Civil Appeals, the insurance company had an additional assignment to the effect that this issue of overinsurance was raised by the'evidence and should have been submitted to the jury as requested by it in due season. No such assignment is presented in the Supreme Court.

Does the undisputed evidence show any overinsurance in the case at bar? We think not. On the other hand, it seems rather clear to us that there was no excessive insurance, under the undisputed evidence. The policy itself permitted $30,000 of insurance on merchandise in the main store building on lots 1, 2, 3, and 4 in block 29 of the town. Counsel for the insurance company, in the application for a writ of error, list several policies renewed and not renewed, on merchandise of insured, aggregating a total of $32,500. But, in this list of policies is included one for $3,000 issued by the Western Assurance Company on merchandise located in the iron-clad warehouse, which was itself situated on lots other than the site of the main store building. It is the testimony of both Stockard and Adams that this $3,000 policy covered merchandise so situated. This evidence is not controverted. The warehouse building did not burn. It is clear to us that this $3,000 policy should be deducted from the total of $32,-500 aforesaid, leaving less than $30,000 on the stock in the main store, and the latter total was authorized on such stock. Consequently Judge Key correctly found that there was no breach of this provision of the policy. Counsel for defendant in error seems to show another deduction, based upon the record, that should be made, but it is not necessary for us to pass on this additional deduction. It follows, from what has been said, that we are of the view that the insurance company was not entitled to a peremptory instruction on the ground that the undisputed evidence in this case showed excessive insurance was being carried.

In the third place, the plaintiff in error contends that it was entitled to a peremptory instruction because the State Insurance Commission in June, 1917, promulgated a new form for standard fire insurance policies in Texas, and that the company could not, under the law, have executed its contract with defendant in error and renewed the policy in suit, even if it had made a binding agreement to do so. The answer of the Court of Civil Appeals to this contention can be found beginning near the middle of the second column on page 341 of 232 S. W. and ending near the bottom of the second column on the next page of that volume.

Counsel for the insurance company, in their application, or since, have cited no authority sustaining their position in this regard or controverting this portion of the opinion by Judge Key. We are inclined to think he is correct, and especially as to the part which we shall soon quote.

The only proof of the new policy form promulgated by the insurance board of the state was a copy of such order alleged to have been signed by the members of this Commission. Judge Key says that he finds no statute authorizing such board to issue certified copies to be used in evidence, and he thinks this copy itself was not admissible. He cites a case by our Supreme Court in that connection.

[5] But, even if that copy was admissible, the law required certain other things to be done before the new order so promulgated would be applicable to any given insurance company. There was no proof that these things had been done. Upon this point, we think Judge Key correct when he says (232 S. W. 342):

"It will be observed that, by force of the statute just quoted, the alleged action of the State Fire Insurance Commission, in prescribing a different form of policies, did not become effective as against the Austin Fire Insurance Company, or any other insurance company, until such company had been furnished with the form of policy referred to, and each company was allowed 60 days after being so furnished to adopt such form of policy. No evidence was submitted to show that, on September 27, 1917, the date when the policy should have been renewed, the Austin Fire Insurance Company had been furnished with the form prescribed. We think the burden rested upon the insurance company to furnish such proof in order to show that it was prohibited by law from complying with the verbal contract it had previously made, and, such proof not having been supplied, that defense failed."

[6] But, in addition to the views of the Court of Civil Appeals upon this contention, it seems to us that the new policy form, even if it had been shown to be binding upon plaintiff in error prior to September 27, 1917, would still constitute no defense to the suit of defendant in error. In that event, under its contract with the insured, plaintiff in error, at any rate owed the former the duty of advising it that it could not renew the policy, because of the new regulations of the State Insurance Commission. If it had complied with that duty, the insured would have had an opportunity to accept a policy under the new standard form. It will not do to say that the insured would not have accepted the new policy. It had always carried a great deal of insurance, and since the standard form was the only one available under the state regulation, they prob-

ably would have accepted it. At any rate, they should have had the opportunity to do so. The mercantile corporation was relying upon a renewal of this policy before expiration, unless advised to the contrary. It is not even contended that any notice of an intended refusal to renew the policy was served upon the insured.

In view of what has been said, we follow the example of the Court of Civil Appeals and pretermit any discussion of the vigorous assignments of counsel for insured attacking the State Insurance Commission statutes as being unconstitutional. We do not think it is necessary for us to do this. The final disposition of the case, in our opinion, does not require it. The same conclusion applies to the cross-assignment of error presented by counsel for defendant in error. It is not necessary to pass upon that.

Upon none of the grounds assigned do we think a peremptory instruction to the jury should have been given in the instant case. We think the application for writ of error presents no reason for disturbing the judgments of the lower courts.

Therefore we recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.