John C. L. Shabeck *vs.* Standard Fire Insurance Company.

JULY 2, 1924.

Present: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

Stearns, J. Assumpsit with two counts: The first alleges that a certain policy of fire insurance in the standard form, whereby defendant did insure plaintiff's stock and fixtures for one year from February 1, 1921, was by defendant, on January 20, 1922, renewed under the original stipulations for the term of one year from February 1, 1922; that a loss by fire occurred March 19, 1922, which defendant refused to pay. The second count alleges an agreement by defendant to renew an existing policy, failure to issue the policy, the loss by fire and consequent damage and refusal of defendant to pay such damage.

The amount of the loss, the compliance or offer to comply by plaintiff with the necessary conditions precedent to

recovery, the refusal by defendant to pay the loss and that there was no increase of hazard, are facts not in dispute. The question is on the liability of the insurer.

After a hearing, jury trial being waived, the trial justice gave decision for plaintiff. The case is here on defendant's bill of exceptions.

For over four years prior to the fire, plaintiff, a manufacturing jeweler, had carried a line of fire insurance amounting to $33,750 through two agents in the city of Providence, and had instructed both agents to continue to carry the same line unless he directed them otherwise. One of these agents, Mr. Harrington, represented defendant and had been its regular agent in this State for some years. Harrington was kept supplied by defendant with policies executed by the officers of the company in blank; he wrote and issued policies for defendant, bound policies, collected premiums, made surveys if requested, settled small losses and did such other business as was required under his agency agreement. As policies in defendant company expired, he renewed them, including those of plaintiff, without giving any previous notification to defendant. Plaintiff had three policies written through Harrington's office expiring in February, 1922, one of which was in defendant company. January 20, 1922, plaintiff and Harrington were talking on another matter. The clerk in the latter's office who had charge of renewals called his attention to the fact that they had some of plaintiff's policies which were expiring on the first and twelfth of February; Harrington then said to plaintiff, "Do you want those policies renewed?" to which plaintiff replied, "Do the usual thing in the usual way," whereupon Harrington directed his clerk to renew the three policies; he understood plaintiff intended to have the policies renewed in the same companies in which plaintiff's insurance had been carried continuously since the first policy was written. An expiration slip was regularly kept by one of Harrington's clerks, which was made up from cards on which the facts concerning different risks and policies were

entered. Each of the entries referring to the three policies was marked "O. K." by the clerk; on the margin of the entry of the policy in defendant company was the notation "R," which indicated that it was renewed. The "O. K." meant that the policy had been renewed in the same company. Two of the policies were renewed and new policies were issued. By an oversight, as it is claimed, the clerk did not issue a new policy in defendant company. The clerk, who was out of the office for a time owing to sickness, on one occasion later, in response to a telephone inquiry from Harrington, assured him that all renewals (which included plaintiff's) were all made up to the tenth of February.

Immediately after the fire plaintiff and Harrington discovered that the policy in defendant company had not been written. Defendant, who had received no notice of the renewal, on being informed of the facts denied any liability. It claims that Harrington, who was also an agent for other insurance companies, never intended to renew this insurance in defendant company. Plaintiff testified that he told Harrington "it was all right" (to renew) but that he did not at that time recall that one of the policies was in defendant company; that he had not thereafter taken out any additional insurance. He paid no premiums on the renewals as no bill had been presented by Harrington. The regular procedure was for Harrington at intervals to send to plaintiff an itemized statement of premiums charged on defendant's policies and the total amount would then be paid and settlement made by one check. Plaintiff had never before paid, or been called upon to pay a premium on any policy in defendant company when the same was issued. He had not made a tender of the premium because of defendant's denial of liability, but he was ready and offered to pay the same at any time; it was his intention to renew the policies in the same companies where he had had them for a number of years. He kept no record of his insurance and did not know at the time what companies he was in, as his bookkeeper kept the policies; all that he knew was the

amount of his insurance; he did not intend to change his companies although he did not tell Harrington that he wanted them renewed in the same companies.

The statutory standard form of fire insurance policy provides that "This policy may by a renewal be continued under the original stipulations, in consideration of premium for the renewed term, provided that any increase of hazard must be made known to this company at the time of renewal or this policy shall be void." Either party may cancel the policy at any time, by giving notice to the other and it is further provided that if the premium has actually been paid, the unearned portion shall be returned to the insured, the insurer retaining the customary short rate.

The actual payment of the premium is not essential to a valid contract of insurance under this statute. The payment or the promise to pay the premium is a legal consideration for the contract of insurance or the renewal thereof. The statute does not require any particular form of renewal. The agreement for a renewal is the essential thing. The form is unessential. The effect of a renewal is to continue the policy under the original stipulations. The practice of different companies in regard to renewals is varied,—renewal slips, binders, new policies, etc., are some of the more usual methods. The practice of defendant company was to issue by its agent a new policy for a renewal. But the failure to issue a policy to plaintiff in no way affects his rights. By the renewal, the original policy is continued under the original stipulations, and the only change therein was in the time of its expiration. *Squier* v. *Hanover Fire Ins. Co.* 162 N. Y. 552; *Sanford* v. *Orient Ins. Co.* 174 Mass. 416; *Lea* v. *Atlantic Ins Co.*, 168 N. C. 478; *Mallette* v. *British Assurance Co.*, 91 Md. 471.

The method of doing business between defendant and its agent did not bind plaintiff. Defendant, a foreign insurance company, is prohibited from making contracts of insurance in this State except by licensed resident agents. Gen. Laws 1923, (3778). Harrington had the authority of

his principal to make the renewal, and the trial justice has decided that he did make it; we find no error in this respect.

The other exceptions of defendant are without merit.

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court with direction to enter judgment on the decision.

*Alexander L. Churchill, Philip C. Joslin, Wilson, Churchill & Curtis,* for plaintiff.

*Felix Hebert,* for defendant.